996 P.2d 646 (2000)
100 Wash.App. 232
STATE of Washington, Appellant,
v.
Vincent Lee BRYANT, Respondent.
No. 44027-6-I.
Court of Appeals of Washington, Division 1.
April 10, 2000.
*647 Charles F. Blackman, Deputy Snohomish County Prosecutor, Everett, for Appellant.
David A. Trieweiler, Seattle, for Respondent.
AGID, Acting C.J.
A Snohomish County trial court dismissed Vincent Bryant's first degree robbery prosecution on the theory that an earlier King County judgment had already litigated the determinative facts. Snohomish County appealed, arguing that its case against Bryant presented different legal and factual issues. We agree. Because the King County court did not consider whether or to what extent the contractual immunity agreement Bryant voluntarily negotiated with King County bound Snohomish County law enforcement officials, the trial court erred by applying collateral estoppel in this case.

FACTS
In November 1993, three masked men robbed Cindy and Steve Linari and their son Brian at gunpoint in Snohomish County. Investigators suspected that Jeffrey Dorman, Willie King, and Vincent Bryant had committed this crime, as well as several other home invasion robberies along the I-5 corridor. But because the Linaris could not identify any of the suspects and police were unable to find implicating physical evidence at the crime scene, the investigators could not substantiate their suspicion. Consequently, in April or May of 1994, Snohomish County Detective Steve Kiser declared the Linari robbery unsolved and closed it.
In October 1996, Kiser learned from King County prosecutors that they had negotiated an immunity agreement with Bryant on March 27, 1996, and had interviewed him on June 6, September 30, and October 7. No Snohomish County representatives were parties to this immunity agreement nor did they attend any of the meetings between Bryant and King County. A little over a month after Bryant's last interview, King County prosecutors contacted Dorman, who also negotiated an immunity agreement with them and gave several statements implicating Bryant in the robberies.
In early December 1996, King County charged Bryant, King, Dorman, and David *648 Israel in King County Superior Court with 41 counts of money laundering, robbery, kidnapping, and residential burglary between October 1993 and March 1994.[1] These counts included the Linari robbery. The trial court severed Bryant's trial from his co-defendants', and on Bryant's objection to venue in King County, dismissed the Linari robbery and kidnapping counts without prejudice on May 9, 1997. About five months later, Kiser and Snohomish County prosecutor Paul Stern interviewed Dorman under the immunity agreement Dorman had negotiated with King County. Weeks later, Snohomish County prosecutors refiled the Linari robbery and kidnapping counts against Bryant in Snohomish County, "based substantially, if not entirely, upon the anticipated testimony of Jeffrey Dorman."
Meanwhile, back in King County, Bryant had moved to suppress Dorman's testimony on the remaining King County counts, alleging that Dorman's testimony was impermissibly derived from Bryant's immunized statements. After conducting a lengthy Kastigar[2] hearing, the trial court suppressed Dorman's testimony on the charges against Bryant, reasoning that the information Bryant provided allowed the State to threaten Dorman with prosecution, which in turn caused Dorman, who had previously refused to cooperate, to enter into his own immunity agreement with the State and implicate Bryant in the crimes. Thus, the State's use of Bryant's statements violated the terms of his immunity agreement, which provided that nothing he revealed could be "utilized by law enforcement to find additional evidence to use against [him]."[3]
Based on this ruling, Bryant sought to suppress Dorman's statements in the pending Snohomish County prosecution as well, arguing that Snohomish County was bound by the King County court's determination that Dorman's statements could not be used against Bryant. Snohomish County responded that collateral estoppel did not apply because it was not a party to the immunity agreement, it had no knowledge of the substance of Bryant's immunized statements, and application of collateral estoppel would be unjust. The trial court agreed with Bryant:
In light of Kastigar v. United States ... and its progeny, whether Jeff Dorman's decision to cooperate with the state in the present case is derived from Vincent Bryant's immunized cooperation in King County is at issue. This is the same issue that was presented ... in the King County case.
Snohomish County then conceded that without Dorman's testimony it lacked probable cause to proceed, and the trial court dismissed the Linari robbery and kidnapping charges. This appeal followed.

DISCUSSION
Although Washington courts have yet to bar a criminal prosecution on collateral estoppel grounds,[4] our Supreme Court has *649 recognized that collateral estoppel applies in criminal cases to bar relitigation of a particular issue or fact previously determined by a valid and final judgment.[5] Typically, collateral estoppel is invoked only when each of the following four elements are met: (1) the issue decided in the prior adjudication was identical to the one presented in the second; (2) the prior adjudication ended in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior litigation; and (4) application of the doctrine will not result in an injustice.[6] In criminal actions, courts undertake a more streamlined "2-step"[7] inquiry, under which they "determine what issues were raised and resolved by the former judgment"[8] and then decide "whether the issues raised and resolved in the former prosecution are identical to those sought to be barred in the subsequent action."[9]
At the outset, we address Snohomish County's contention that the legal issue previously raised and resolved in King County is not the issue presented here. The County argues that the issues are different because the "extent to which non-party Snohomish County was contractually bound by the immunity agreement voluntarily negotiated between [Bryant] and contracting-party King County was an issue separate from that facing Judge Mertel in the prior proceeding with [Bryant] and King County." Snohomish County is correct. The issue in the prior proceeding was not whether King County was bound by the immunity agreement it entered into with Bryant, but rather whether King County violated its terms. Whether Snohomish County officials were similarly bound by this agreement, which it neither initiated nor negotiated, is a different question altogether.[10]
Citing Murphy v. Waterfront Commission of New York Harbor,[11] Bryant argues that separate prosecuting authorities in the same state "must certainly be bound by each other's immunity agreements." But Murphy does not apply here because the immunity agreement Bryant entered into with King County was an informal, contractual agreement, as opposed to the formal, statutorily-authorized grant of immunity considered in Murphy.[12] As commentators and courts have recognized, "[w]ith respect to the hazard of prosecution by a different sovereign, informal immunity gives less protection than a formal immunity grant."[13]
Formal immunity agreements are statutorily-authorized compensation for defendants who are compelled to relinquish their Fifth Amendment privilege against self-incrimination and testify.[14] Informal immunity agreements, in contrast, are bargained-for contracts under which the prosecuting authority agrees to limit its prosecution rights in return for the defendant's cooperation or testimony.[15] Because a defendant who voluntarily seeks an immunity agreement *650 is not compelled to testify, the government has no obligation to offer in exchange protection commensurate with the constitutional privilege against self-incrimination. Thus, although prosecutors entering into these informal immunity contracts must treat defendants with fundamental fairness under the due process clause of the Fourteenth Amendment,[16] they do not offer protection greater than whatever is provided by the terms of the contract itself.[17]
The issue, then, is whether the King County Prosecuting Attorney's office's agreement, which guaranteed that nothing Bryant revealed could "ever be used against [him] in any prosecution," or "utilized by law enforcement to find additional evidence to use against [him]," binds Snohomish County even though Snohomish County officials were not parties to and did not even learn of the agreement until months after its execution. Because this question whether or to what extent county prosecutors may bind other counties to contracts with defendants has not been considered by Washington courts, we look to other state and federal courts for guidance.
In so doing, we find the analogy to plea agreements instructive. An agreement to plead guilty to a crime is a voluntary contract between the prosecutor and defendant in which the latter gives up his right to a trial in consideration of concessions by the former such as lesser charges or a sentencing recommendation. As we discussed earlier, an informal immunity agreement is simply a voluntary contract between a person subject to prosecution who provides information in consideration of a promise not to be prosecuted. As with any contract, both are limited to the subject matter and terms of the agreement.[18]
In State v. Barnett, the Ohio Court of Appeals considered whether "one county's prosecutor has the actual or apparent authority to prohibit a defendant's prosecution in a second county for an unrelated offense without the second county's consent."[19] The court below had determined that a plea agreement signed by one prosecutor was binding on all prosecutors in the state. It reasoned that each county prosecutor acts as an agent of the State itself, and further, that even if the contracting prosecutor lacked actual authority to bind a neighboring county, "the Defendant would be justified in believing the prosecutor had this authority."[20] Relying on Staten v. Neal,[21] a Seventh Circuit case interpreting Illinois law on a nearly identical issue, the Barnett court concluded that although county prosecutors are agents of the state, "the county prosecutor's agency authority extends to the county line when investigating and prosecuting crimes. Thus, the county prosecutor is an agent of the state with respect to crimes committed in his county."[22] As for the argument that the prosecutor had acted with apparent authority, the court rejected that argument on the theory that "the state of Ohio did not represent that ... prosecutors were authorized to act as its agents and plea bargain with respect to offenses committed wholly outside" the county they represent.[23] The Barnett *651 court also cited an Illinois case, People v. Woods,[24] which concluded that "`it would be absurd to hold, without authority, that one county's State's Attorney could bind another county's State's attorney without the latter's knowledge and approval regardless of court approval'."[25]
We find the logic of the Staten, Barnett and Woods cases persuasive in Washington because, as in Ohio and Illinois, there is no indication that Washington has extended the jurisdictional authority of its county prosecutors to neighboring counties.[26] State prosecutors, elected by their constituents to prosecute crimes occurring in their counties, do not have the authority to either alter or foreclose another county's prosecution rights without that county's consent. We hold that the trial court erred when it dismissed Bryant's prosecution on collateral estoppel grounds.[27]
Reversed and remanded for further proceedings consistent with this opinion.
ELLINGTON, J., and WEBSTER, J., concur.
NOTES
[1] Of the 41 counts, 35 related to Bryant.
[2] See Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (requiring government to prove during evidentiary hearing that it obtained the evidence it intends to use against a defendant independently from the defendant's immunized statements). In United States v. Dudden, the Ninth Circuit recognized that the "requirement that the government demonstrate independent sources for its evidence is not limited to cases in which the defendant has given compelled testimony and therefore has formal immunity under the statute." 65 F.3d 1461, 1468 (9th Cir.1995).
[3] We affirmed on appeal, although on different grounds. Instead of determining that the State made impermissible nonevidentiary use of Bryant's statements, we held that the State violated the clear terms of the immunity contract with Bryant by making evidentiary use of Bryant's testimony to build a case against him. State v. Bryant, 97 Wash.App. 479, 983 P.2d 1181 (1999).
[4] State v. Williams, 132 Wash.2d 248, 254, 937 P.2d 1052 (1997). This is not, as Snohomish County suggests, because application of the doctrine in criminal cases is disfavored. In Williams, State v. Cleveland, 58 Wash.App. 634, 794 P.2d 546, review denied, 115 Wash.2d 1029, 803 P.2d 324 (1990), and State v. Dupard, 93 Wash.2d 268, 609 P.2d 961 (1980), the courts declined to apply collateral estoppel because issues of fact were previously litigated in a parole board hearing, a dependency hearing, and an administrative hearing respectively. Because the hearings were not intended to serve the same purpose as a criminal prosecution, application of collateral estoppel would be unjust. Here, the situation is different because the factual determination Bryant argues should bar his current Snohomish County prosecution occurred in a King County criminal trial.
[5] State v. Peele, 75 Wash.2d 28, 30, 448 P.2d 923 (1968).
[6] Williams, 132 Wash.2d at 254, 937 P.2d 1052.
[7] Peele, 75 Wash.2d at 30, 448 P.2d 923.
[8] Id.
[9] Id. at 31, 448 P.2d 923. Our review of this legal conclusion is de novo. State v. Thorn, 129 Wash.2d 347, 351, 917 P.2d 108 (1996).
[10] We agree with Bryant, however, that the factual issue is the same. The King County court ruled that Dorman, as an evidentiary source, was derived from Bryant's immunized statements. Because, as Snohomish County concedes, its case against Bryant could not proceed without Dorman's testimony, an identical factual issue whether Dorman's testimony was derived from Bryant's immunized statementswas presented in both cases.
[11] 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).
[12] Id. at 54, 84 S.Ct. 1594.
[13] Graham Hughes, "Agreements for Cooperation in Criminal Cases," 45 Vand. L.Rev. 1, 65 (1992).
[14] United States v. Turner, 936 F.2d 221, 223-24 (6th Cir.1991).
[15] Id.
[16] Fundamental fairness means that the courts will enforce promises made by prosecuting authorities that induce a criminal defendant to waive his constitutional rights. Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (contractual plea bargain).
[17] In Turner, the Sixth Circuit recognized that informal immunity agreements are contractual in nature and "do not bind other parties not privy to the original agreement." 936 F.2d at 223.
[18] Both are, of course, also governed by the guarantee of fundamental fairness. See footnote 16 above.
[19] 124 Ohio App.3d 746, 707 N.E.2d 564, 568, dismissed, appeal not allowed by 81 Ohio St.3d 1497, 691 N.E.2d 1058 (1998). As in Barnett, the Snohomish County offense was unrelated to the King County offenses because it was committed at a different time in a different county. Id. Here the crime also involved different victims.
[20] Id. at 567.
[21] 880 F.2d 962 (7th Cir.1989).
[22] Id. at 570. (Emphasis added.)
[23] Id. Although some federal courts have held that United States Attorneys in one district may bind United States Attorneys in other districts, the Barnett court distinguished these cases because "United States Attorneys are under the direct supervision and control of the United States Attorney General," as opposed to state prosecutors, who are "elected by local residents and work on behalf of those constituents, inquiring into the commission of crimes within the county." Id. at 570.
[24] 169 Ill.App.3d 126, 119 Ill.Dec. 722, 523 N.E.2d 190 (1988).
[25] 707 N.E.2d at 570 (quoting Woods, 169 Ill. App.3d at 130, 119 Ill.Dec. 722, 523 N.E.2d 190).
[26] RCW 36.27.020(4), which outlines the duties of the prosecuting attorney, provides only that county prosecutors are authorized to "[p]rosecute all criminal and civil actions in which the state or the county may be a party ...". It does not extend this authority to other counties.
[27] We do not reach any possible arguments Bryant may make on remand. Although Snohomish County itself observes that CrR 8.3(b) may compel dismissal of a criminal prosecution "when there has been prejudice to the rights of the accused," we express no opinion on CrR 8.3(b)'s application here.