6 P.3d 1218 (2000)
STATE of Washington, Respondent,
v.
Mark B. HARRIS, Appellant.
No. 45125-1-I.
Court of Appeals of Washington, Division 1.
August 28, 2000.
Reconsideration Denied October 9, 2000.
*1220 Gregory C. Link, Washington Appellate Project, Seattle, for Appellant.
Erik Pedersen, Skagit County Prosecuting Attorney, Mount Vernon, for Respondent.
*1219 WEBSTER, J.
The primary issue presented by this case is whether a plea agreement entered into by an individual prosecutor to make a specific sentencing recommendation is entered into on behalf of the prosecutor's office alone or on behalf of the State of Washington, binding other State agencies, specifically, the Department of Corrections (DOC). Here, the prosecutor agreed to recommend a standard range sentence. The Community Corrections Officer (CCO) preparing the presentence investigation report recommended an exceptional sentence, which the trial court imposed. Appellant Harris argues that the CCO's recommendation contrary to the prosecutor's breached the plea agreement entered into by the State. He also asserts that the CCO is statutorily precluded from advocating for a sentence.
We hold that a CCO is a neutral and independent participant in the sentencing process and is not bound by a plea agreement entered into by the prosecutor's office. We further find that a CCO is not precluded from making a sentencing recommendation. Thus, we affirm.

BACKGROUND
Pursuant to a plea agreement, Harris agreed to plead guilty to one count of communication with a minor for immoral purposes. The State agreed to recommend a sentence at the top of the standard range. At the sentencing hearing, the prosecutor made the agreed upon recommendation. The sentencing court turned for input to the CCO who prepared the presentence investigation report. The CCO recommended imposition of an exceptional sentence and offered support for his position. The CCO's position was stated in the presentence report. Harris did not object to the presentence report or to the CCO's comments at the hearing. The court imposed an exceptional sentence.

PRELIMINARY ARGUMENTS
A. Harris's Challenge Is Not Statutorily Prohibited by RCW 9.94A.210(4)
The State first argues that Harris's appeal of his exceptional sentence is statutorily prohibited because he does not challenge the court's reasons for the exceptional sentence. An exceptional sentence may be reversed only where the reviewing court finds that the reasons supplied by the sentencing judge are not supported by the record or do not justify the sentence, or that the sentence *1221 imposed was clearly excessive or too lenient. See RCW 9.94A.210(4).
But this statute seems aimed at prohibiting the appellate court from substituting its judgment for that of the sentencing judge regarding the grounds for imposing an exceptional sentence and the length of such a sentence. This statute should not be read as prohibiting review of errors occurring in the sentencing proceedings. Although not addressing the argument that review is barred by RCW 9.94A.210(4), courts have addressed the question whether a plea agreement was breached where an exceptional sentence was imposed. See, e.g., State v. Sledge, 133 Wash.2d 828, 838, 947 P.2d 1199 (1997). Likewise, RCW 9.94A.210(4) should not prevent review of Harris's claimed error that the trial court exceeded its authority under the Sentencing Reform Act by allowing the CCO to argue in favor of an exceptional sentence. Thus, we find that RCW 9.94A.210(4) is not a bar to review in this case.
B. Harris's Arguments Are Not Barred by RAP 2.5
The State next argues that Harris did not challenge the CCO's recommendation at the sentencing hearing and thus may not challenge it for the first time on appeal. See RAP 2.5(a). We assume that the State means this argument to apply to both the errors claimed by Harris. Harris did not object below to the CCO's participation or claim that this participation constituted a breach of the plea agreement.
RAP 2.5(a) is discretionary: "The appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a) (emphasis added). See also State v. Ford, 137 Wash.2d 472, 477, 973 P.2d 452 (1999) (noting that the rule is discretionary, not absolute, and never acts as an absolute bar to review). Furthermore, a party may raise for the first time on appeal a manifest error affecting a constitutional right. See RAP 2.5(a). A prosecutor's failure to adhere to the terms of a plea agreement violates the due process rights of the accused. See Sledge, 133 Wash.2d at 839, 947 P.2d 1199. Moreover, although the State apparently did not argue in Sledge that review was precluded, the court reviewed the claimed breach of the plea agreement even though the court noted that the defendant failed to object below to the testimony that he claimed on appeal constituted a breach of the agreement. See id. at 833, 835, 947 P.2d 1199. Thus, we will review Harris's claimed breach of the plea agreement. We also review the claimed error that the trial court exceeded its authority under the SRA by hearing argument by the CCO. See Ford, 137 Wash.2d at 478, 973 P.2d 452 ("`[W]hen a sentencing court acts without statutory authority in imposing a sentence, that error can be addressed for the first time on appeal.'" (quoting State v. Paine, 69 Wash.App. 873, 884, 850 P.2d 1369 (1993))).

ANALYSIS
A. The CCO Did Not Breach the Plea Agreement
Harris argues that the governmental party to the plea agreement is the State, as in the State of Washington, not simply the prosecutor's office. Thus, he argues that the plea agreement binds all agents of the State, including the DOC. He contends that the State breached the plea agreement by allowing the CCO to recommend an exceptional sentence. The State maintains that the plea agreement was with the prosecutor's office alone, that is, that the DOC was not a party to the plea agreement and was not bound by it.
The parties do not point us to any Washington authority that addresses the issue of whether the governmental party to a plea agreement is the State of Washington or simply the prosecutor's office. First, we set out the fundamental principles underlying plea agreements. Second, we examine recent Washington cases that relate to our question, although they do not directly answer it. Third, we turn to cases in other jurisdictions that have addressed our precise issue. Finally, we draw our conclusion for the case before us.
1. Principles Governing Plea Agreements
Plea agreements are contracts and are analyzed under basic contract principles. *1222 See Sledge, 133 Wash.2d at 838, 947 P.2d 1199. Contract law imposes an implied promise by the governmental party[1] to the plea agreement to act in good faith. See id. at 839, 947 P.2d 1199. But because plea agreements concern fundamental constitutional rights of the accused, the defendant's contract rights implicate due process considerations. See id. "Due process requires a prosecutor to adhere to the terms of the agreement." Id. (citing Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). "`[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand.'" Sledge, 133 Wash.2d at 839-40, 947 P.2d 1199 (quoting Mabry v. Johnson, 467 U.S. 504, 509, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984)). The prosecutor has a duty not to explicitly undercut the terms of the agreement or evidence an intent to circumvent the terms. See Sledge, 133 Wash.2d at 840, 947 P.2d 1199. The prosecutor is obliged to make the promised sentencing recommendation but need not do so enthusiastically. See id. The prosecutor must candidly answer the court's questions and not hold back any information relevant to the plea agreement. See id. Finally, it is well established that the court is not bound by the plea agreement. See RCW 9.94A.090(2); Sledge, 133 Wash.2d at 839 n. 6, 947 P.2d 1199.
2. Related Washington Cases
In Sledge, upon which Harris relies, the juvenile offender stipulated to the use of the manifest injustice report prepared by the probation officer. See 133 Wash.2d at 831, 947 P.2d 1199. The prosecutor nevertheless insisted on presenting live testimony. See id. After informing the court that she recommended a standard range confinement pursuant to the plea agreement, the prosecutor called the probation officer who prepared the report. See id. at 833, 947 P.2d 1199. The prosecutor elicited detailed testimony from the probation officer concerning the juvenile's criminal history and the officer's reasons for her recommendation of an exceptional sentence, including the aggravating factors on which she had relied. See id. at 835, 947 P.2d 1199. The State then called the offender's parole officer who testified concerning the offender's institutional problems. See id. Finally, the State gave a summation of the evidence concerning the aggravating factors supporting an exceptional sentence. See id. at 837, 947 P.2d 1199. The supreme court found that the State had violated its duty of good faith by undermining the recommendation and had breached the plea agreement because it was not necessary to repeatedly ask the probation officer to elaborate on the aggravating factors, there was no purpose to be served by the parole officer's testimony other than to "vitiate and contradict the State's standard range recommendation", and "the State's summation of the aggravating factors was a transparent attempt to sustain an exceptional sentence." See id. at 842-43, 947 P.2d 1199.
But Sledge does not address the question presented by Harris. The breach of the plea agreement in Sledge was caused not by the fact that the probation officer made a recommendation different from the prosecutor's but rather by the prosecutor's strong advocacy in favor of an exceptional sentence that undermined the recommendation in the plea agreement. The instant case is distinguishable from Sledge because here the prosecutor did not call the CCO as a witness nor elicit any comments from the CCO. After the prosecutor made the State's recommendation, the court invited comments from the CCO who prepared the presentence investigation report. In a soliloquy, the CCO explained his exceptional sentence recommendation. Neither the prosecutor nor the court prompted the CCO for further information.
In State v. Poupart, 54 Wash.App. 440, 446-47, 773 P.2d 893 (1989), this court held *1223 that juvenile court probation counselors are not bound by the terms of the plea agreement. But the probation counselors in juvenile court are employees of the juvenile court and are statutorily authorized under RCW 13.04.040 to make disposition recommendations. See id. at 447, 773 P.2d 893.
In a very recent opinion, this court held, as a matter of first impression, that one county prosecutor is not bound by an immunity agreement made by another county prosecutor. See State v. Bryant, 100 Wash.App. 232, 240, 996 P.2d 646 (2000). In addressing this issue, the court analogized to and relied on cases discussing plea agreements. See id. at 239, 996 P.2d 646. The court reasoned that although county prosecutors are agents of the state, each county's actual and apparent agency authority extended only to the county line; the court stated that "there is no indication that Washington has extended the jurisdictional authority of its county prosecutors to neighboring counties." Id. at 240, 996 P.2d 646. Although Bryant may be read to lend some support to the proposition that a prosecutor enters into an immunity agreement, and by analogy a plea agreement, on behalf of the prosecutor's office alone and not on behalf of the State of Washington, we note that the foundation of the court's reasoning is that a county prosecutor's agency extends only to the county boundary. Here, we are not crossing county lines. Both agents, the prosecutor and the DOC, are operating within the same jurisdiction and making recommendations within the same proceeding.
Finally, we recognize that CCOs have in the past made recommendations that vary from the State's recommendation pursuant to a plea agreement. See, e.g., State v. Miller, 60 Wash.App. 914, 916, 808 P.2d 186 (1991); State v. Jerde, 93 Wash.App. 774, 777, 970 P.2d 781, review denied, 138 Wash.2d 1002, 984 P.2d 1033 (1999). However, the parties have not pointed us to any cases wherein this practice has been challenged. We also note that although the preparation of a presentence investigation report is statutorily authorized, the parties agree that there is no statutory guidance as to the contents of these reports. CrR 7.1(b) mandates that the report contain the defendant's criminal history and "such information about the defendant's characteristics, financial condition, and the circumstances affecting the defendant's behavior as may be relevant in imposing sentence or in the correctional treatment of the defendant, information about the victim, and such other information as may be required by the court." Thus, neither the legislature nor the court rules explicitly authorize the DOC to make a sentencing recommendation.
3. Other Jurisdictions Addressing the Issue Are Split
(a) Jurisdictions finding that a plea agreement binds the government as a whole
The Supreme Court of Florida addressed the issue "whether a promise contained in a plea agreement that the `state' will recommend a given sentence binds only the state attorney's office or whether it also precludes other state agents, such as law enforcement officers, from making sentencing recommendations contrary to the terms of the agreements." See Lee v. Florida, 501 So.2d 591, 592 (Fla.1987). In Lee, the plea agreement provided that the state would recommend probation but a law enforcement agent's recommendation of incarceration was included in the presentence investigation report. See id. The court found that a plea agreement by the prosecutor binds other state agents: "once a plea bargain based on a prosecutor's promise that the state will recommend a certain sentence is struck, basic fairness mandates that no agent of the state make any utterance that would tend to compromise the effectiveness of the state's recommendation." Id. at 593.
When determining whether a plea agreement binds the government as a whole or a specific agency, the federal courts "examine what the defendant reasonably understood when the plea was entered." Allen v. Hadden, 57 F.3d 1529, 1535 (10th Cir.1995). Federal courts have held that a plea agreement entered on behalf of the government binds the government as a whole absent an express limitation on the government's obligations:
"Whenever a United States Attorney negotiates and enters a plea agreement, it is *1224 the Government that `agrees' to whatever is agreed to. Of course, the Government may  and quite readily can  `agree' through its agents that only certain of its agents are to be obligated in particular respects, or that the Government's obligation is otherwise qualified." United States v. Harvey, 791 F.2d 294, 303 (4th Cir.1986). Absent an express limitation on the government's obligations, a plea agreement entered on behalf of the government binds the government as a whole.
Allen, 57 F.3d at 1535 (finding that the government's promise pursuant to a plea agreement that dismissed counts would have no adverse effect on the defendant bound not only the parole commission but also all other government agencies). See also United States v. Carter, 454 F.2d 426, 428 (4th Cir. 1972) (finding that where the government negotiates a plea agreement through the agency of a specific United States Attorney, the agreement binds the United States government at large); Harvey, 791 F.2d at 295 (concluding that the plea agreement was, as a matter of law, ambiguous on whether the agreement precluded further prosecutions for stated offenses only in the district entering into the agreement or prevented further prosecutions anywhere, by any agency of the government, and holding that the ambiguity must be construed against the government).

(b) Jurisdictions finding that plea agreements bind only the prosecutor
The Montana Supreme Court holds that a plea agreement is not breached when a probation officer recommends a sentence different from that contained in the plea agreement. See Montana v. Milinovich, 248 Mont. 373, 812 P.2d 338, 340 (1991); Montana v. Yother, 253 Mont. 128, 831 P.2d 1347 (1992); Montana v. Bowley, 282 Mont. 298, 938 P.2d 592 (1997); Montana v. Sanders, 294 Mont. 539, 982 P.2d 1015 (1999). The Milinovich court reasoned that the probation officer's recommendation was part of a statutorily authorized presentence investigation report.[2]See Milinovich, 812 P.2d at 340. Following Milinovich, the Yother court found that a probation officer's recommendation was not equivalent to a recommendation by the prosecutor. See 831 P.2d at 1352.
But the Montana Supreme court is not in complete accord on this issue. The dissenting view reasons that the prosecutor's recommendation is rendered meaningless when another state agent makes a contrary recommendation that the trial court is likely to take more seriously:
I conclude that when guilty pleas are induced by promises from one agent of the State to recommend a suspended sentence, and that recommendation is then rendered meaningless because another agent of the State makes a contrary recommendation, the State has not met "strict and meticulous standards of both promise and performance." Therefore, I do not agree with the majority's conclusion that "when a probation officer recommends a sentence different from that contained in a plea agreement, this does not constitute breach of the plea agreement by the prosecutor." Furthermore, to the extent that our prior decisions in State v. Yother (1992), 253 Mont. 128, 831 P.2d 1347, and State v. Milinovich (1991), 248 Mont. 373, 812 P.2d 338, hold otherwise, I would reverse those decisions.
What sense does it make to pay lip service to the principle that an accused person has a right to rely on material representations made to him or her as an inducement to enter into a plea agreement, but then allow the practical effect of that inducement to be circumvented by permitting another agent of the same government to do just the opposite of what was promised to the defendant? Is there any question whose recommendation the district judge will take more seriously? Because of that practical reality, what benefit did Bowley get from pleading guilty?
Bowley, 938 P.2d at 601 (Trieweiler, J., specially concurring in the result; Hunt, J., joining); see also Sanders, 982 P.2d at 1021 (reiterating the dissenting position).
*1225 The Supreme Court of Arizona found that a plea agreement is not breached when the written agreement provided that "the State" would make no recommendation on sentencing but the investigating officer's recommendation that the defendant receive a lengthy sentence was included in the presentence investigation report. See Arizona v. Rogel, 116 Ariz. 114, 568 P.2d 421, 423 (1977). The court stated: "[W]e think it is evident that in entering a plea agreement containing provisions requiring certain conduct by `the State,' it is the parties' mutual intent to use that term in referring only to the prosecutorial branch of the State." Id.
The Wisconsin Supreme Court reasoned that the preparer of a presentence investigation report is a neutral participant acting on behalf of the sentencing judge and found that probation officers, parole officers, and law enforcement officers, like the judge, cannot be parties to the plea agreement. See Farrar v. Wisconsin, 52 Wis.2d 651, 191 N.W.2d 214, 217-18 (Wis.1971); Wisconsin v. McQuay, 154 Wis.2d 116, 452 N.W.2d 377, 383 (1990). The court stated:
[T]he preparer of a presentence report is to be a neutral and independent participant in the sentencing process. It necessarily follows that a parole or probation officer acts on behalf of an independent judiciary, not as an agent of the state, in preparing a presentence report. Like the sentencing court, the preparer of a presentence report is neither a party to nor bound by a plea agreement between the defendant and the state and, therefore, cannot breach the terms of that agreement in preparing the report.
McQuay, 452 N.W.2d at 383.
The Utah court of appeals rejected the Florida court's conclusion and followed the reasoning of the Arizona and Wisconsin courts, holding that an investigating police officer is not bound by the prosecutor's plea bargain. See Utah v. Thurston, 781 P.2d 1296, 1300 (Utah App.1989).
4. Conclusion
We agree with the reasoning of the Wisconsin courts. The CCO preparing the presentence investigation report is a neutral and independent participant in the sentencing process; he or she acts not as an agent of the State of Washington but on behalf of the independent judiciary. Because the CCO is not functioning as the State's agent when preparing the presentence report, the DOC is not a party to the plea agreement entered into by the prosecutor's office and is not bound by it.
We wish to suggest, however, the better course of providing an express provision in the plea agreement explaining that only the prosecutor's office is bound by the terms of the agreement and that the CCO, or another government employee as the case may be, is free to make a separate recommendation in the presentence investigation report or at the sentencing hearing. See United States v. Stemm, 847 F.2d 636, 640 (10th Cir.1988) (observing that problems and possible misunderstandings with plea agreements could be better avoided by specific references in the plea agreement explaining what actions will be taken by the government concerning presentence reports).
B. Statutory Authorization Under RCW 9.94A.110
Harris argues under the rule of statutory construction that specific inclusions exclude implications, that RCW 9.94A.110 excludes a CCO from advocating for a sentence. RCW 9.94A.110 provides a list of those from whom the court must hear argument regarding sentencing and does not include a CCO:
The court shall ... allow arguments from the prosecutor, the defense counsel, the offender, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigative law enforcement officer as to the sentence to imposed.
RCW 9.94A.110.
But the use of the word "shall" indicates that the list provided specifies those from whom the court is required to hear if any of the listed individuals desire to speak; that is, these individuals have a statutory right to speak. The statute does not preclude the court from requesting and receiving other arguments. We do not believe that the Legislature intended the list in RCW 9.94A.110 *1226 to preclude a CCO from presenting a sentencing recommendation.

CONCLUSION
We find that there was no breach of the plea agreement in this case and affirm.
ELLINGTON, J., and COX, J., concur.
NOTES
[1] Harris argues that the Sledge court stated that the plea agreement is between the defendant and the State. See 133 Wash.2d at 839 n. 6, 947 P.2d 1199. The State here argues that the Sledge court indicated that the "State" stood for the Skagit County Prosecutor. See 133 Wash.2d at 831, 947 P.2d 1199. These arguments do not advance our understanding of the issue because the case law discussing plea agreements uses the terms "State" and "prosecutor" interchangeably, as do many criminal cases.
[2] Although the Montana statute authorized the presentence investigation and provided for the contents of the report, it did not specifically authorize a recommendation. See Milinovich, 812 P.2d at 340 (quoting MCA § 46-18-112).