# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77100-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JOEL RAYMOND, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: May 20, 2019 |
| | ) | |

MANN, A.C.J. — Joel Raymond appeals his sentence after pleading guilty to identity theft and possession of methamphetamine. Raymond contends that the trial court deprived him of due process by allowing a victim of one of Raymond's previous criminal offenses to offer statements during his sentencing hearing. We disagree and affirm.

I.

Between November 18 and December 13, 2016, Raymond manufactured and either cashed, or attempted to cash, six checks against one victim's bank account and two checks against another victim's bank account using false identification. Then on December 13, 2016, Raymond attempted to cash a $9,850 check at a Key Bank. The

manager of the bank recognized Raymond and called the police. When the police arrived, Raymond fled and dropped his backpack. A search of Raymond's backpack revealed several different false identifications with Raymond's picture, manufactured checks purportedly from a third victim, 2.5 grams of methamphetamine, three cell phones, a tablet computer, two laptops, a Bluetooth mouse, and a portable printer.

On June 5, 2017, Raymond pleaded guilty to possession of methamphetamine, two counts of identity theft in the first degree, four counts of identity theft in the second degree, and resisting arrest. As part of the plea deal the State agreed to limit its recommendation at sentencing to an exceptional sentence of 168 months, which amounted to the top range for consecutive sentences on two counts with the other counts to run concurrent. Raymond acknowledged that 168 months was less than the maximum penalty and acknowledged that the State had agreed not to seek consecutive sentences for six of his eight offenses.

At sentencing, the State asked the trial court to sentence Raymond to an exceptional sentence of 168 months. The State argued that Raymond's offender score would be 16 if all of his offenses were counted, and therefore some of his offenses were not being counted. The State further argued that Raymond was a career criminal who had created a sophisticated mechanism with which he was able to manufacture checks and identification. Finally, the State asked the court to deny Raymond's request for a drug offender sentencing alternative (DOSA) based on the seriousness of Raymond's criminal history, his poor performance during his last DOSA, and the public risk inherent in allowing Raymond to escape jail time. While on DOSA for a previous charge,

Raymond was sent back to prison for DOSA violations seven times and was arrested with a loaded handgun in Oregon after fleeing the jurisdiction.

The State asked the sentencing court to hear from Sally Buckingham,[1] one of Raymond's victims during a similar criminal offense in 2005. Raymond objected to Buckingham's statement because she was not a victim of Raymond's current offenses. The court allowed Buckingham to speak after explaining: "I'm aware that Ms. Buckingham's comments would not be a basis for ordering an exceptional sentence. But I think she's entitled to be heard generally about these matters."

Buckingham described Raymond's prior crime and its impact on her life. She said that Raymond "purposely and maliciously broke into [her] home" and stole "precious pieces of heirloom jewelry." Buckingham also noted that "Raymond has chosen to let his addictions rule his life . . . and suppress any reasonable act to take ownership of his criminal abuse, theft, and the destruction of property."

Defense counsel argued for a lenient sentence. Counsel argued that Raymond was a family man with a serious addiction. Counsel argued that a 168-month sentence would not fix the true problem underlying these crimes, but allowing Raymond to attend drug treatment would. Counsel also addressed Raymond's previous DOSA and his issues while in that program. She explained that "[r]elapse is always part of recovery" and that Raymond was ready to take responsibility for his actions and to work hard to get help.

The sentencing court then indicated that it would "be happy to hear from anyone who wishes to speak on Mr. Raymond's behalf." Raymond's fiancée, Elizabeth

---

[1] The State also included a letter from Buckingham as an attachment to its sentencing memorandum.

Fletcher, her sister, Rebecca Julius, and Raymond's friend, Cameron Hicks all spoke.[2] They each described Raymond as an honorable man who took care of his responsibilities, was a great family member and father figure to their children, and who suffered from a debilitating addiction. Raymond's fiancée attributed his relapse to a dispute that broke out between Raymond and his father, where Raymond suffered a serious head injury and was prescribed opioid pain killers, and his inability to find mental health treatment afterwards.

Raymond then addressed the court and apologized for what he did and how he had impacted the victims. Raymond also attributed his relapse to the altercation with his father and his inability to get mental health treatment. Raymond then disputed Buckingham's allegations. He argued that he was never charged with breaking into her home but was nevertheless sorry for how his actions affected her. Finally, Raymond asked for treatment. He told the court that the DOSA helped him last time, which was evidenced by the fact that he remained clean for almost six years and he did well while on probation.

The sentencing court sentenced Raymond to an exceptional sentence of 108 months, 60 months less than the State requested. The court also denied Raymond's request for a DOSA. For the exceptional sentence, the court reemphasized that it "cannot consider Ms. Buckingham's comments on the issue of whether an exceptional sentence should be entered." But, nevertheless, "there are substantial and compelling reasons justifying an exceptional sentence . . . because it is undoubtedly true that the

---

[2] Also attached to the defense's sentencing memorandum were six letters to the court written on Raymond's behalf from his friend and family.

defendant's high offender score results in some of the current offenses going unpunished."

For the DOSA, the court explained that it appreciated the comments it received in support of Raymond, read all of the letters on Raymond's behalf, and that "the defendant has redeeming qualities." However, the court determined that it could not "in good conscience grant a second DOSA in this case." The court explained that despite being eligible and possibly benefiting from DOSA, Raymond performed poorly during his first DOSA and did not apply the skills he should have learned in DOSA when faced with his current relapse. Further, the court noted that this was not a crime of opportunity to fuel Raymond's drug habit but rather Raymond developed "an elaborate, sophisticated crime scheme . . . to defraud people and steal their money."

Raymond appeals his sentence.

## II.

Raymond first argues that the sentencing court violated his due process rights by relying on Buckingham's statements during the sentencing hearing. We disagree.

This court reviews constitutional issues de novo. State v. Mullen, 171 Wn.2d 881, 893-94, 259 P.3d 158 (2011). The United States Constitution and Washington State Constitution prohibit a state from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend XIV; see also CONST. art I, § 3. A criminal defendant's due process right is violated where "victim impact evidence is introduced that is so unduly prejudicial that it renders the [sentencing hearing] fundamentally unfair." Payne v. Tennessee, 501 U.S. 808, 809, 111 S. Ct. 2597 115 L. Ed. 2d 720 (1991).

In Payne v. Tennessee, the U.S. Supreme Court overruled two prior cases—Booth v. Maryland, 482 U.S. 496, 107 S. Ct. 2529, 96 L. Ed. 2d 440 (1987) and South Carolina v. Gathers, 490 U.S. 805, 109 S. Ct. 2207, 104 L. Ed. 2d 876 (1989)—that prohibited the use of victim impact evidence during the sentencing phase of capital cases. During the sentencing phase of Payne's trial, the court allowed a grandmother to speak about how the defendant's murder of her child and granddaughter impacted her grandson: "He cries for his mom. He doesn't seem to understand why she doesn't come home." Payne, 501 U.S. at 815. The Supreme Court noted that "the assessment of harm caused by the defendant as a result of the crime charged has understandably been an important concern of the criminal law, both in determining the elements of the offense and in determining the appropriate punishment." Payne, 501 U.S. at 809.

In determining that the grandmother's statement did not violate the Constitution the Court emphasized that the defendant was allowed to present evidence of his good character. On Payne's behalf, "the capital sentencing jury heard testimony from Payne's girlfriend . . . Payne's parents . . . and a clinical psychologist . . . . In contrast, the only evidence of the impact of Payne's offenses . . . was [the] grandmother's description . . . that the child misses his mother and baby sister." Payne, 501 U.S. at 826. The Court emphasized the need to balance the defendant's and victim's rights: "[T]here is nothing unfair about allowing the jury to bear in mind th[e] harm [caused by the defendant] at the same time as it considers the mitigating evidence introduced by the defendant." Payne, 501 U.S. at 826.

In Smith v. Ryan, the Ninth Circuit analyzed whether the appellant's death sentence violated due process. 823 F.3d 1270, 1273 (2016). While on probation from

a rape conviction, the appellant raped another woman and killed two additional women. During the sentencing phase of the appellant's murder trial, the prosecution introduced substantial evidence of the appellant's prior crimes, including testimony by the victim in the appellant's second rape conviction. The Ninth Circuit found that this was not a due process violation: "[t]here is little doubt that the prosecution's powerful rebuttal evidence was prejudicial to Smith. Witness after witness testified in detail about the psychological and physical violence that Smith inflicted on his victims, painting a picture of exceptional violence." Smith, 823 F.3d at 1283-84. Nevertheless, the Ninth Circuit found the Arizona Supreme Court's conclusion "that the prosecution's rebuttal evidence, while powerful, did not render Smith's sentencing proceedings fundamentally unfair." Smith, 823 F.3d at 1284.[3]

Here, Raymond's sentencing hearing did not violate due process. While the sentencing court did allow Buckingham to speak, Raymond cites no persuasive authority that this, alone, was a due process violation. Instead, the question is whether Buckingham's statement rendered the sentencing hearing fundamentally unfair. But the sentencing court also allowed three individuals to testify on Raymond's behalf. As Payne and Smith indicate, it was not fundamentally unfair to allow the State to offset Raymond's good character evidence with Buckingham's statement about how

---

[3] The court noted further:
The fact that the trial court imposed some limits on the prosecution's rebuttal evidence bolsters the reasonableness of the Arizona Supreme Court's conclusion. In response to the defense's argument in both proceedings that allowing evidence about all of Smith's eleven other adjudicated and unadjudicated crimes would be overbroad, the trial court limited the scope of the prosecution's evidence to crimes for which Smith had been either charged or convicted.
Smith, 823 F.3d at 1283.

Raymond's prior crimes impacted her life. See also Romano v. Oklahoma, 512 U.S. 1, 114 S. Ct. 2004, 129 L. Ed. 2d 1 (1994) (Affirming the defendant's death sentence over Eighth and Fourteenth Amendment challenges after the prosecutor introduced detailed evidence of the defendant's prior murder convictions during the sentencing phase of his trial); State v. Gentry, 125 Wn.2d 570, 619, 888 P.2d 1105 (1995) (citing Payne, 501 U.S. at 825-26).

### B.

Raymond next argues that because the Sentencing Reform Act (SRA), chapter 9.94A RCW, does not specifically grant the victim of the defendant's prior criminal acts the right to speak during sentencing, the sentencing court erred as a matter of law. Again, we disagree.

We review the interpretation of a statute de novo. State v. Mitchell, 169 Wn.2d 437, 442, 237 P.3d 282 (2010). If a statute is plain on its face, "we give effect to that plain meaning as the expression of what was intended." Tracfone Wireless, Inc. v. Washington Dep't of Revenue, 170 Wn.2d 273, 281, 242 P.3d 810 (2010)

RCW 9.94A.500(1) requires that before imposing a sentence upon a defendant, the sentencing court

> [s]hall consider the risk assessment report and presentence reports, if any, including any victim impact statement and criminal history, and allow arguments from the prosecutor, the defense counsel, the offender, the victim, or a representative of the victim or survivor, and an investigative law enforcement officer as to the sentence to be imposed.

On its face, RCW 9.94A.500(1) mandates the minimum requirements for a sentencing hearing. It sets out the evidence and arguments that the sentencing court must consider if available. The statute does not, however, limit who is allowed to argue

or speak during sentencing. Instead, that decision is left to the discretion of the sentencing court. Our Supreme Court has agreed, concluding that former RCW 9.94A.110[4] provides a "baseline—a minimum amount of information which, if available and offered must be considered in sentencing." State v. Sanchez, 146 Wn.2d 339, 353, 46 P.3d 774 (2002) (allowing oral argument by community correction officer despite not being specifically listed within the statute). The Sanchez court noted further that the statute "prescribes only who the court must hear from" and "does not . . . specifically limit who may present testimony at the sentencing hearing to only those parties listed in the statute." Sanchez, 146 Wn.2d at 354, n.10. See also State v. Hixson, 94 Wn. App. 862, 866, 973 P.2d 496 (1999) ("[former] RCW 9.94A.110 mandates that the persons listed must be permitted to speak but does not limit the court's discretion in hearing from others"); State v. Harris, 102 Wn. App. 275, 287-88, 6 P.3d 1218 (2000).[5]

Similarly, in State v. Herzog, the Supreme Court was asked whether the sentencing court erred in considering facts alleged in a constitutionally infirm foreign conviction. 112 Wn.2d 419, 420, 771 P.2d 739 (1989). It noted that "a sentencing court should be almost completely unfettered in order that it may 'acquire a thorough acquaintance with the character and history of the man before it.'" Herzog, 112 Wn.2d

---

[4] RCW 9.94A.110 was recodified as RCW 9.94A.500 in 2001.
[5] In Harris, this court explained that the use of the word "shall" in former RCW 9.94A.110 "indicates that the list provided specifies those from whom the court is required to hear if any of the listed individuals desire to speak; that is, these individuals have a statutory right to speak. The statute does not preclude the court from requesting and receiving other arguments." Harris, 102 Wn. App. at 288.

at 424 (quoting United States v. Doyle, 348 F.2d 715, 721 (2d Cir. 1965)). While in dicta, the Court noted

> [h]ad the sentencing judge in the case at hand not been provided with the detailed findings of the tribunal, but rather an affidavit from the West German victim detailing the defendant's sexual assault upon her, the judge certainly could have considered the victim's accusations in determining the defendant's sentence within the range. Granted, as unconfronted hearsay, the evidence is unreliable; but due process simply does not demand the same evidentiary presumptions nor reliability in a sentencing proceeding.

Herzog, 112 Wn.2d at 431 (emphasis added).

Raymond argues that leaving the sentencing court the inherent authority to hear from any and all parties "fails to acknowledge [due process] limitations, fails to offer any principled limitations of its own, and so cannot stand." But Raymond conflates the nature of the due process clause as it relates to sentencing. The due process clause does not prohibit any class of persons from speaking at sentencing, so long as the overall sentencing hearing was not rendered fundamentally unfair as a result. As long as the sentencing hearing is not rendered fundamentally unfair, it is left to the sentencing court's discretion who may be afforded the opportunity to speak. This interpretation of the SRA properly places the onus on the sentencing judge to determine what and how much information to consider at sentencing. This would not afford the sentencing court limitless discretion, as Raymond contends, but instead would be reviewed under the abuse of discretion standard.

Here, while the sentencing court allowed Raymond's prior victim to speak, it expressly recognized and confirmed twice that it could not consider Buckingham's statements in imposing an exceptional sentence. The court also invited and heard

statements from several individuals to speak on behalf of Raymond. The sentencing court acted well within the discretion afforded under RCW 9.94A.500.

We affirm.

Mann, A.C.J.

WE CONCUR:

Andrus, J.

Chun, J.