[No. 22825-1-I. Division One. June 12, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. SHAWN LEE POUPART, *Appellant.*

*Julie A. Kesler* and *Helen A. Anderson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Cheryl G. Strobert, Deputy,* for respondent.

SCHOLFIELD, J.—Shawn Lee Poupart appeals the trial court's findings of fact and conclusions of law upon a manifest injustice disposition. We affirm.

## FACTS

Shawn pleaded guilty to the crime of malicious mischief in the third degree and theft in the third degree, committed

on April 27, 1988, and June 16, 1988, respectively. The malicious mischief charge was for throwing rocks at the car and home of Leslie Pelkey, Shawn's mother. The theft in the third degree concerned an incident in which Shawn stole a "locked back" knife from a Sears store.

At the plea and disposition hearing, the trial court first dealt with a modification hearing for failure to fulfill certain conditions of an earlier sentence. It was alleged that Shawn had changed his residence without notifying his probation counselor, and had consumed drugs and alcohol and ended up in Harborview Hospital as a result.

After accepting Shawn's guilty pleas on the two counts, the court then heard sentencing recommendations from the probation counselor, the deputy prosecutor, and because Shawn was also a dependent child, from his DCFS[1] caseworker. The standard range for the malicious mischief charge was 3 to 6 months' supervision, 16 to 32 hours of community service, 2 to 4 days' detention, and $0 to $25 fine, based on Shawn's status as a middle offender. The probation counselor, Rob Legge, recommended that the court find a manifest injustice, and instead commit Shawn to the Division of Juvenile Rehabilitation for a period of 65 weeks.[2]

Legge based his recommendation on Shawn's continued violence, evidenced by the fact that the crimes before the court were the result of altercations with his mother and by reports from his various placements as to Shawn's violent and assaultive conduct. Legge also referred to a psychological evaluation which indicated that Shawn might be either suicidal or homicidal, and suggested a structured treatment setting for at least a year. Legge noted that Shawn's violent

---

[1]Division of Children and Family Services, a division of DSHS.

[2]Later in the hearing, Legge amended his recommendation to 52 weeks, noting that a juvenile cannot be sentenced to a greater term of confinement than an adult can be sentenced to for the same crime. The maximum term for malicious mischief in the third degree resulting in damage over $50, a gross misdemeanor, is 1 year.

behavior was linked to drug and alcohol abuse. He did not recommend a manifest injustice finding on the theft in the third degree charge, but rather recommended 30 days' confinement, with credit for time served.

Shawn's attorney, Theresa Olson, had not been given a copy of Legge's report and his supporting documents until the morning of the hearing. She was granted a recess to review the documents. After the brief recess, Olson stated on the record that her advice to her client was to ask for a continuance, so that she could adequately respond to the material presented. However, Shawn wished to resolve the matter that day, so the court proceeded.

Next, the court heard from Lyn Erickson, Shawn's DCFS caseworker. Dependency was established in February 1986, pursuant to an agreed order, based on "conduct disorder, low I.Q., aggressiveness and self–injuries". In addition, because Shawn had assaulted his mother at that point, she was unwilling to have him in her home. Thus, there was no parent available at that time to care for Shawn.

Erickson recited Shawn's previous placements for the court. Erickson indicated that these placements were by and large failures, due to Shawn's increasing violence. Because Shawn was a dependent child, DCFS was required to find a placement for him if the court did not order long–term detention. According to Erickson, the only available placement was the YMCA Continuum Care facility in downtown Seattle. Erickson felt that the facility would be inadequate to meet Shawn's needs, because he had already run from the facility, and ended up in Harborview. Erickson had attempted to find a drug and alcohol placement for Shawn, but a placement for him was declined due to fear of his violence. Erickson's recommendation was that Shawn needed locked–up drug and alcohol treatment, and he had made that recommendation to Legge.

The State's recommendation pursuant to a plea agreement on the theft charge was 3 months' supervision, 16 hours' community service, 4 days' detention, restitution,

and a $70 victim penalty assessment. The State's recommendation for the malicious mischief charge was 3 months' supervision, 16 hours' community service, 2 days' detention, and restitution. Except for stating the sentences recommended by the State, the deputy prosecutor made no additional statement.

After also hearing from Shawn's attorney, the trial court stated that Shawn was an exceptionally needy child, requiring intensive services. In addition, the court found that Shawn presented a threat to community safety. The court found aggravating factors of Shawn's recent criminal history, his failure to follow conditions placed upon him, his abuse of drugs and alcohol, the potential for violence exhibited by Shawn's stealing of a knife after a fight with his mother, his continuing to offend while other matters were pending with the court, and his demonstrated lack of remorse.

For all these reasons, the trial court made a finding that a standard range sentence would not meet Shawn's needs, would offer no accountability, and would present a threat to community safety. The trial court sentenced Shawn to a commitment of 52 weeks for the malicious mischief charge, and for 30 days on the theft charge.

This appeal timely followed.

## PLEA AGREEMENT

Shawn argues that both the probation counselor and the DCFS caseworker are agents of the State and were bound by any plea agreement made by the deputy prosecutor. Shawn further argues that the deputy prosecutor also had an obligation to argue forcefully for the State's recommendation, in the face of the probation counselor's recommendation for a finding of a manifest injustice.

When a defendant pleads guilty to a crime, he waives significant rights, including the right to a jury trial, the right to confront his accusers, the right to present witnesses in his defense, the right to remain silent, and the right to have the charges proven against him beyond a reasonable

doubt. *State v. Collins,* 46 Wn. App. 636, 731 P.2d 1157, *review denied,* 108 Wn.2d 1026 (1987). It has been established that due process protections accorded adults, with the exception of trial by jury, are to be given to children in juvenile court proceedings as well. *See In re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967).

The State is obligated to comply with any promises it makes within a plea agreement:

> [W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

*Santobello v. New York,* 404 U.S. 257, 262, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971). Full and wholehearted compliance is required. *In re Palodichuk,* 22 Wn. App. 107, 589 P.2d 269 (1978). If the prosecutor were to renege on his bargain as contained in the plea bargain, it would undercut the judicial system. *Collins,* at 639. However, the sentencing judge is not bound by any recommendations made by the prosecutor pursuant to a plea agreement, as stated in RCW 9.94A.090.[3]

Shawn argues that the State had an obligation at his hearing to act as an advocate for the standard range sentence, in light of the probation counselor's manifest injustice recommendation. In *State v. Peterson,* 97 Wn.2d 864, 866, 651 P.2d 211 (1982), the Washington Supreme Court noted that the inducement for a defendant to plead guilty is the prospect that the prosecutor's recommendation will be made "with some degree of advocacy."

In *Palodichuk,* the deputy prosecutor made his recommendations pursuant to the plea bargain, but then told the court that he had "second thoughts" about the recommendation. (Italics omitted.) *Palodichuk,* at 109. On appeal the *Palodichuk* court held that the State had breached its plea

---

[3]RCW 9.94A.090(2) states as follows:

"The sentencing judge is not bound by any recommendations contained in an allowed plea agreement and the defendant shall be so informed at the time of plea."

agreement, even though it initially fulfilled the agreement's terms. *Palodichuk,* at 109.

The actions of the deputy prosecutor in the case before us are distinguishable. An examination of the record indicates that she merely made her recommendations, without preamble or any other remarks. While the deputy prosecutor did not urge the court to accept the recommendations, neither did she attempt to undercut them in any way. To hold that a deputy prosecutor must strongly advocate the State's recommendation pursuant to a plea bargain because other witnesses present different recommendations would place an unfair burden on the State. The comment set forth in dicta in *State v. Peterson, supra,* means no more than that the State is required to correctly advise the court of the terms of the plea agreement and affirmatively inform the court that the State recommends sentencing in accord with the plea agreement. In the absence of any other evidence that the State did not fulfill its part of the bargain, Shawn's contention that the State breached its plea agreement is without merit.

Shawn also argues that the probation counselor and the DCFS caseworker were agents of the State and that the prosecutor was required to make them conform their recommendations to the plea bargain or risk being in breach. This argument, too, is without merit. RCW 13.04.040 provides for the appointment of probation counselors as follows:

The administrator shall, in any county or judicial district in the state, appoint or designate one or more persons of good character to serve as probation counselors during the pleasure of the administrator. The probation counselor shall:

(1) Receive and examine referrals to the juvenile court for the purpose of considering the filing of a petition or information pursuant to RCW 13.34.040, 13.34.180, and 13.40.070 as now or hereafter amended, and RCW 13.32A.150;

(2) Make recommendations to the court regarding the need for continued detention or shelter care of a child unless otherwise provided in this title;

(3) Arrange and supervise diversion agreements as provided in RCW 13.40.080, as now or hereafter amended, and ensure that the requirements of such agreements are met except as otherwise provided in this title;

(4) Prepare predisposition studies as required in RCW 13.34.120 and 13.40.130, as now or hereafter amended, and be present at the disposition hearing to respond to questions regarding the predisposition study: *Provided,* That such duties shall be performed by the department of social and health services for cases relating to dependency or to the termination of a parent and child relationship which is filed by the department of social and health services unless otherwise ordered by the court; and

(5) Supervise court orders of disposition to ensure that all requirements of the order are met.

All probation counselors shall possess all the powers conferred upon sheriffs and police officers to serve process and make arrests of juveniles under their supervision for the violation of any state law or county or city ordinance.

It is clear from the statute that the probation counselor is an employee of the juvenile court, which is administered by the superior court of the individual county. Probation counselors have a statutory duty to make studies and recommendations to the court respecting dispositions. This function is a valuable aid to the court. Shawn's argument would eliminate this source of information except where it agreed with the prosecutor's recommended sentence. This case is a good illustration of why probation counselors' sentence recommendations should be made independently of the prosecuting attorney. We reject the argument that a court employee is under the control of the prosecutor's office.

Shawn argues that because probation counselors can serve process and can arrest juveniles, they are police

officers. A careful reading of the statute shows that this authority is confined to juveniles already under their supervision. Therefore, the probation counselor does not have the general authority of a police officer.

Shawn cites a Florida case, *Lee v. State*, 501 So. 2d 591 (Fla. 1987), for its holding that a sentencing recommendation contrary to a plea agreement, that was made in a presentence report by a law enforcement officer, constituted a breach of the agreement, and entitled the defendant to withdraw his plea. In the absence of further information as to the nature of this law enforcement officer's responsibilities, we cannot find this case to be persuasive authority, especially since it deals with an adult offender, rather than a juvenile.

Shawn argues further that the DCFS caseworker was also bound by the plea agreement. The Department of Social and Health Services is charged under RCW 13.34 and RCW 26.44 with responsibility for dependent children, that is, victims of abuse or neglect. As such, they are not involved directly in the criminal justice system, either adult or juvenile. It is, however, possible for a child to be both a dependent child and an offender. RCW 13.04.300.

The DCFS caseworker here was present because Shawn was a dependent child, and thus DCFS had custody and would be determining where he would be placed if the court did not order long–term detention. The caseworker was there in part to advise the trial court concerning Shawn's living arrangements, in much the same way that a parent might do if the juvenile offender were living at home.

In addition, the trial court was required to determine whether a manifest injustice was appropriate. RCW 13.40-.020(12) defines "[m]anifest injustice" to mean

a disposition that would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of this chapter[.]

Evidence such as probation officers' reports, psychiatric studies and other information is available to the court to

enable it to make a determination of whether a clear danger to society exists. *See State v. Rhodes,* 92 Wn.2d 755, 600 P.2d 1264 (1979). The trial court below received this independent information concerning the Department's probable disposition of Shawn if he were not incarcerated to determine whether a clear danger to society was present. The State did not breach its plea agreement.

## STATE AS ADVOCATE

Shawn argues that the State's promise to recommend a particular sentence precludes it from arguing for the manifest injustice on appeal.

In *State v. Arko,* 52 Wn. App. 130, 758 P.2d 522 (1988), the Court of Appeals was presented with a circumstance in which the defendant pleaded guilty to one count of second degree possession of stolen property. The standard range was 2 to 5 months. The State recommended 3 months, but after Arko failed twice to appear at sentencing, it increased its recommendation to 4 months. However, the trial court sentenced Arko to 24 months.

The *Arko* court held as follows:

[T]he State fulfilled its obligation under the plea bargain when it advocated a sentence within the standard range. Once it did so, it had met the terms of its agreement and was not obliged to do more. After sentencing the State's obligation is to become an advocate for the court's position and thus to argue in favor of the sentence imposed to the extent that such arguments are supportable. This court then has the benefit of full briefing on the issue which is necessary to provide effective review.

*Arko,* at 133–34. This holding disposes of Shawn's contention to the contrary.

Judgment affirmed.

SWANSON and WINSOR, JJ., concur.

Review denied at 113 Wn.2d 1008 (1989).