46 P.3d 774 (2002)
146 Wash.2d 339
STATE of Washington, Respondent,
v.
Librado SANCHEZ, Petitioner.
State of Washington, Respondent,
v.
Mark Harris, Petitioner.
Nos. 70331-1, 70442-2.
Supreme Court of Washington, En Banc.
Argued May 22, 2001.
Decided May 9, 2002.
As Amended May 13, 2002.
*775 Suzanne Elliott, Gregory Link, Washington Appellate Project, Seattle, for Petitioner.
John Knodell, Grant County Prosecutor, Thomas Verge, Skagit County Prosecutor, Erik Pedersomn, Deputy Prosecutor, for Respondent.
BRIDGE, J.
We decide whether in each of these consolidated cases, the petitioner should be permitted to withdraw his plea of guilty because he entered it in exchange for a promise from the prosecutor to recommend a particular sentence to the sentencing judge. At the sentencing hearing, a person other than the prosecutor recommended a longer sentence than had been agreed to in the plea agreement. We hold that since neither of these people, Sanchez's investigating officer (IO) nor Harris's community corrections officer (CCO), was a party to the plea agreement, no breach of the plea agreement occurred. The Court of Appeals is affirmed in both cases.

FACTS

Sanchez
In 1991, Sanchez, who was 21 years old at the time, served as youth pastor to the church attended by 12-year-old CG and her family. In February or March of 1991, Sanchez kissed CG after they attended a movie together. For about eight months, the sexual contacts escalated, first to masturbation and oral sex, and eventually to two instances of penile-vaginal intercourse. The relationship terminated after CG's father saw Sanchez kissing her. CG disclosed the sexual contacts to her parents when she was 16, but did not report them to the police until October 10, 1997, when she was 19. In January 1998, Sanchez was arrested and ultimately charged. He then agreed to plead guilty to three counts of child molestation in the second degree and entered pleas accordingly. Pursuant to the plea agreement, the prosecutor agreed to make no sentencing recommendation at the sentencing hearing.
Prior to sentencing, Dr. Jerry Miller evaluated Sanchez for a Special Sex Offender Sentencing Alternative (SSOSA). Dr. Miller diagnosed Sanchez as suffering from sexual arousal to children, referring to a pattern of sexual contacts with younger children beginning when Sanchez was seven years old. Dr. Miller recommended that the judge impose a SSOSA sentence, stating his opinion that Sanchez would be amenable to treatment and was at a low risk to reoffend. Denise Hollenbeck, the CCO from the Department of Corrections, prepared a presentence report recommending a 75-month sentence, to be partially suspended under a SSOSA.
*776 At the sentencing hearing, the prosecutor made no sentencing recommendation. He then advised the judge that CG, her parents, and Sergeant Dave Ruffin, the 10, wished to make statements to the court. The victim and her parents argued against a SSOSA on the grounds that the child had been severely traumatized, Sanchez had violated a position of trust to commit the crime, and indications of deceit in the report suggested a likelihood of reoffending. Sergeant Ruffin also argued against a SSOSA. In his opinion, Sanchez's acts "violated everything, the trust and what religion stood for," and were "as bad as if somebody drug someone in the bushes and violently raped them." [1] Ruffin stated his belief that Sanchez had lied to Dr. Miller to get a SSOSA recommendation, and said that the judge should not give a SSOSA sentence. The judge then imposed a sentence, within the standard range, of 70 months in prison, stating that he did not believe a SSOSA was appropriate absent a perversion. The Court of Appeals affirmed.

Harris
Between October and December 1997, Mark Harris, who was in his mid-forties, performed oral sex on his 14-year-old nephew BJ on three or four different occasions. In December 1997, when BJ's parents became suspicious, they broke off the relationship between Mark and BJ. A year later, BJ informed his mother of what had happened. Harris was arrested on January 21, 1999. He was initially charged with third degree rape of a child. On May 13, 1999, as a result of a plea agreement, he entered a plea of guilty to an amended charge of communicating with a minor for immoral purposes, contrary to RCW 9.68A.090. The prosecutor agreed to recommend a 29-month sentence, which was at the high end of the standard range. The standard range sentence was 22 to 29 months.
Pursuant to the plea agreement, the prosecutor recommended a 29-month sentence at the sentencing hearing. The CCO recommended an exceptional sentence of 60 months in his presentence report and spoke in support of that recommendation at the sentencing hearing. The court found the aggravating circumstances suggested by the CCO applicable, and sentenced Harris to 60 months. The Court of Appeals affirmed.

Procedural Issues
Initially we must decide whether either petitioner may appeal his sentence since neither raised any objection to his sentence to the trial court. Next, we determine whether Sanchez may appeal his sentence, a sentence within the standard sentencing range.
The State asserts that unless a defendant moves to withdraw his plea or asks the court to reconsider his sentence, he cannot complain on appeal that the State failed to abide by the agreement. State v. Giebler, 22 Wash.App. 640, 642-3, 591 P.2d 465 (1979). The petitioners counter that failure to adhere to a plea agreement involves a manifest violation of a constitutional right, which the defendant may raise for the first time on appeal. RAP 2.5(a)(3); State v. Scott, 110 Wash.2d 682, 688, 757 P.2d 492 (1988).
In Giebler, the prosecutor initially agreed as part of a plea bargain to recommend eight months in jail followed by probation. Giebler, 22 Wash.App. at 642, 591 P.2d 465. At sentencing, the prosecutor recommended that the defendant be "sentenced to the Department of Institutions," and said he could not recommend a deferred sentence because the defendant had committed further offenses in the interim. The defendant failed to object. Id. Under those facts, Division One held that the defendant; had lost his right to raise the issue. Id. at 642-43, 591 P.2d 465.
Prior to Giebler, the United States Supreme Court had held that due process requires a prosecutor to adhere to the terms of a plea agreement. Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Similarly, this court had held that when the State breaches a plea agreement, it "undercuts the basis for the waiver of constitutional rights implicit in the plea." State v. Tourtellotte, 88 Wash.2d 579, 584, 564 P.2d 799 (1977). Subsequent cases have attempted to reconcile Giebler with these *777 cases by narrowing its holding to the specific facts of the case. See, e.g., State v. Van Buren, 101 Wash.App. 206, 2 P.3d 991 (distinguishing Giebler on the grounds that the prosecutor may have been justified in changing his recommendation because of the defendant's further offenses, and pointing out that the case did not address RAP 2.5(a)(3) issues), review denied, 142 Wash.2d 1015, 16 P.3d 1265 (2000). See also State v. Walsh, 143 Wash.2d 1, 17 P.3d 591 (2001) (finding Giebler unpersuasive because it does not address RAP 2.5(a)(3) and because it relies on out-of-state cases having different rules for raising issues on appeal). We now expressly disapprove of the decision in Giebler to the extent that it conflicts with our jurisprudence on the due process right to enforce a plea agreement.
When a defendant claims constitutional error, the court previews the merits of the claimed error to determine whether the argument is likely to succeed. State v. WWJ Corp., 138 Wash.2d 595, 603, 980 P.2d 1257 (1999). The error is considered "manifest" under RAP 2.5(a)(3) if the facts necessary to review the claim are in the record and the defendant shows actual prejudice. State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995). In both these cases, all relevant facts are in the record. Actual prejudice is shown by the fact that neither Sanchez nor Harris was sentenced according to the plea agreement. Because failure to adhere to a plea bargain implicates due process, this court can accept review under the "manifest error affecting a constitutional right" standard.[2]
In Sanchez's case, the State raises an additional procedural issue. Under the Sentencing Reform Act of 1981, chapter 9.94A RCW, a sentence within the standard range generally is not appealable. Former RCW 9.94A.210(1) (2000). However, the statute does not prevent an appellant from challenging the procedure used by the court to impose a standard range sentence. State v. Ammons, 105 Wash.2d 175, 183, 713 P.2d 719; 718 P.2d 796, cert. denied, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986). Sanchez challenges the procedure; namely, whether the court erred in allowing the IO to provide an argument regarding sentencing that was at variance with that which the prosecutor was bound to by the plea agreement. Therefore, there is no statutory bar to the appeal.
We hold that review is appropriate in both cases under the "manifest error affecting a constitutional right" standard, and is not barred in Sanchez's case by former RCW 9.94A.210(1).

ANALYSIS
In each of these cases the prosecutor made the recommendation at sentencing to which he agreed in the plea agreement. The petitioners do not allege that the prosecutors breached the agreement by their own words or conduct.[3] Rather, the issue presented is whether the recommendations made by others to the judge at the sentencing hearing breached the agreement. In effect, the petitioners claim that a plea agreement binds not only the individual prosecutor but also any other employee of the State of Washington or, indeed, in the case of the IO in Sanchez any government employee, even one in a separate department.
*778 A plea agreement is like a contract and is analyzed according to contract principles. State v. Sledge, 133 Wash.2d 828, 838-39, 947 P.2d 1199 (1997). Petitioners point out that the caption in criminal cases is "State v....," and they refer to courts' habit of using the terms "state" and "prosecutor" interchangeably. See Sledge, 133 Wash.2d at 840, 947 P.2d 1199 (referring to "the State's good faith obligation to effectuate the plea agreement"). They also cite to RCW 36.27.005, which provides that prosecuting attorneys "appear for and represent the state" and RCW 36.27.020(4), stating that the prosecuting attorney shall prosecute "all criminal and civil actions in which the state or the county may be a party." (Emphasis added.) The petitioners assert that because a contract binds not only the party to the contract, but also the party he or she represents and that party's agents, the plea agreement binds all "agents" of the state.
The State responds that the duty is restricted to the prosecutor, and that plea agreements are made not between the "state" and the defendant, but between the prosecutor and the defense attorney (or defendant if acting pro se). Thus, the State asserts that the agreements did not bind either Sanchez's 10 or Harris's CCO.
We have previously held that "[t]he prosecutor and the defendant are the only parties to a plea agreement." State v. Wakefield, 130 Wash.2d 464, 474, 925 P.2d 183 (1996). The statutes governing the plea bargaining process are in accord with this holding. Former RCW 9.94A.080 (2000) ("The prosecutor and the attorney for the defendant, or the defendant when acting pro se, may engage in discussions with a view toward reaching [a plea] agreement"); former RCW 9.94A.090(1) (2000) ("If a plea agreement has been reached by the prosecutor and the defendant....") (emphasis added). Conversely, when the police enter into an agreement with the defendant but do not make the prosecutor a party, the prosecutor is not bound by its terms. State v. Reed 75 Wash.App. 742, 745, 879 P.2d 1000 (1994), review denied, 125 Wash.2d 1016, 890 P.2d 20 (1995). Because the "prosecutor and the defendant are the only parties to a plea agreement," State v. Wakefield, 130 Wash.2d at 474, 925 P.2d 183 (emphasis added), we find the agency analysis argued by the petitioners inappropriate.[4] Instead, whether a government *779 employee other than the prosecutor is bound by the agreement depends not on the employee's role vis-a-vis the prosecutor, but on the employee's role vis-a-vis the sentencing court. Thus, for example, the Court of Appeals has previously held that because juvenile court probation counselors are employees of the court, they are not bound by the terms of the plea agreement. State v. Poupart, 54 Wash.App. 440, 446-7, 773 P.2d 893 (1989); accord, State v. Men, 54 Wash. App. 23, 771 P.2d 1178 (1989). In contrast, a parole officer who has no statutory role in the sentencing hearing and whose input was not requested by the trial court is bound by the plea agreement because he or she is acting on behalf of the prosecutor rather than the court. Sledge, 133 Wash.2d at 843, 947 P.2d 1199.
However, neither Poupart nor Sledge controls our analysis here. Unlike the probation counselors in Poupart, neither Sanchez's IO nor Harris's CCO is an employee of the court. Unlike the parole officer in Sledge, both Sanchez's IO and Harris's CCO have a statutory role in sentencing. And unlike the parole officer in Sledge, the sentencing court in Harris requested the CCO's input.
In the absence of Washington cases that are directly on point, both the State and the petitioners cite to authority from other jurisdictions. Arizona has held that when a plea agreement refers to the state, "it is the parties' mutual intent to use that term in referring only to the prosecutorial branch of the State" and therefore an IO's report suggesting a lengthy sentence did not violate the agreement. State v. Rogel, 116 Ariz. 114, 568 P.2d 421, 423 (1977). In Utah, an IO's recommendation that the defendant be imprisoned, and his statement that "`15 years is not long enough'" did not violate the prosecutor's agreement to recommend probation, because "policy requires a plea agreement reached by a prosecutor not to be binding on other state agencies." State v. Thurston, 781 P.2d 1296, 1298, 1300 (Utah Ct.App.1989). Similarly, Wisconsin has held that a parole or probation officer preparing a presentence report "acts on behalf of an independent judiciary, not as an agent of the state." State v. McQuay, 154 Wis.2d 116, 452 N.W.2d 377, 383 (1990).
Florida alone has determined that a prosecutor's plea bargain binds all state agents. Lee v. State, 501 So.2d 591, 593 (Fla.1987). This is similar to the position of federal courts, which have held that absent an express limitation on the government's obligations, a plea agreement entered on behalf of the government by one assistant attorney general (AAG) binds another AAG because "[t]he [federal] prosecutor's office is an entity and as such it is the spokesman for the Government." Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Here, the petitioners go further and claim not that one prosecutor binds another prosecutor but that a prosecutor's agreement binds other persons, including at least one, Sanchez's IO, who is not even a state employee.[5] We cannot agree.

Sanchez
The statutory role of Sanchez's IO is outlined in former RCW 9.94A.110 (2000).[6] An IO is listed as a person whose arguments the court must allow:
The court shall ... allow arguments from the prosecutor, the defense counsel, the offender, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigative law enforcemerit *780 officer as to the sentence to be imposed.
Former RCW 9.94A.110 (emphasis added). Sanchez did not object to the fact that the IO testified but now disputes the conclusions drawn from his strongly advocated opinions.
The dissent contends that argument "`as to sentence to be imposed'" in former RCW 9.94A.110 is distinguishable from a sentence recommendation. Dissent at 786. However, because there are no restrictions on the type of argument that can be made regarding the "sentence to be imposed," this is a distinction without difference. Thus, contrary to the dissent's assertion, former RCW 9.94A.110 specifically authorizes parties other than the prosecutor and the defendant, including the IO, to make sentencing recommendations.[7]
Sanchez asserts that when a prosecutor enters a plea bargain knowing that another government employee will present the sentencing judge with strong reasons to impose a harsher sentence, there is an appearance of unfairness. However, as pointed out by the Court of Appeals, the IO, an independent official, was not involved in the plea agreement:
A prosecutor does not breach a plea agreement by advising the court of witnesses who wish to testify at a sentencing hearing and therefore the State here did not undercut the plea agreement. State v. Davis, 43 Wash.App. 832, 837, 720 P.2d 454, review denied, 106 Wash.2d 1017 (1986). Sergeant Ruffin was not an employee of the prosecutor's office and was not a party to the plea agreement. He did not participate in the plea negotiations and had no voice in deciding the bargained for agreement.
Sanchez Ct. of Appeals Commissioner's Ruling (Aug. 1, 2000) at 4.
Furthermore, a prosecutor does not control the actions of an IO.[8] Despite the dissent's contention that former RCW 9.94A.440 allows prosecutors to "direct the activities of law enforcement," dissent at 785, former RCW 9.94A.440(2)(b) merely requires a prosecutor to ensure that the investigating officer's evidence is sufficient to support a decision to prosecute. Moreover, unlike a prosecutor's obligation to inform victims of a proposed plea agreement, a prosecutor need not even discuss the proposed plea agreement with an IO. See former RCW 9.94A.080-.100 (2000).
Because former RCW 9.94A.110 specifically contemplates "arguments" from an IO regarding the sentence, and because that officer is not under the control of the prosecutor's office, he is more like the independent officer in Poupart than the parole officer in Sledge. We therefore hold that Sanchez's IO did not have a duty to abide by Sanchez's plea agreement with the county prosecutor, and therefore, his plea agreement was not breached by Sergeant Ruffin's testimony at the sentencing hearing.

Harris
The statutory duty imposed on a CCO is to produce a presentence report pursuant to court order, though the statute does not specifically mention him/her as a person whose arguments must be allowed at the sentencing hearing.
[T]he court shall, at the time of plea or conviction, order the department to complete a presentence report before imposing a sentence upon a defendant who has been convicted of a felony sexual offense....
The court shall consider the risk assessment report and presentence reports, if any, including any victim impact statement and criminal history[.]"
Former RCW 9.94A.110 (emphasis added).
Harris argues that Former RCW 9.94A.110 does not permit a CCO to present *781 argument at the sentencing hearing or allow him or her to place such argument in the written text of the presentence report. However, this court has already acknowledged a CCO's ability to recommend a specific sentence to the sentencing court. State v. Mail, 121 Wash.2d 707, 708, 854 P.2d 1042 (1993) ("[CCO] recommended an increased exceptional sentence of 85 months") (emphasis added). Moreover, the statute does not specify any such limitations, but rather provides for "a baseline  a minimum amount of information which, if available and offered, must be considered in sentencing." Mail, 121 Wash.2d at 711, 854 P.2d 1042. Specific limitations on the sources the sentencing court may rely on are found in former RCW 9.94A.370(2) (2000):
In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgement includes not objecting to information stated in the presentence reports.
Former RCW 9.94A.370(2). Thus, the court may rely on any information in the presentence report, unless it is the subject of an objection.[9] Furthermore, a CCO acts on behalf of the court when it provides information through a presentence report. See CrR 7.1(b) (presentence report may contain "such other information as may be required by the court") (emphasis added). Harris did not object to the information content of the report, but now disputes the conclusions drawn from that information.
Similarly, although former RCW 9.94A.110 does not require oral arguments from the CCO, neither does it disallow argument.[10] It seems incongruous to require a report on a standard form that contemplates a sentencing recommendation without permitting oral presentation of that recommendation and the reasons for it. By statute, the CCO has an independent duty of investigation and recommendation in these cases. The CCO is not part of the prosecution team. The CCO was not involved in the preparation of, nor the promises made in, the plea agreement.[11]See former RCW 9.94A.080-.100. In these circumstances, we hold that a CCO cannot be bound by the plea agreement.

Additional Issues
Sanchez claims that the trial judge erred in not imposing a SSOSA. At Sanchez's hearing, the trial judge stated that he did not believe a SSOSA was appropriate absent a perversion, and gave his opinion that the request for a SSOSA in this case was merely a plea for leniency:
So then that brings us down to the question of whether or not SSOSA's [sic] responsible. The argument seems to me, that I'm hearing, is that he doesn't have a problem, he doesn't have perversion, so why would he need SSOSA is my question? Why is SSOSA an element? Seems to me that what's being argued here is that there *782 really ought to be leniency and the Court ought to treatto use SSOSA to accommodate leniency, and I don't think the law allows me to do that.
SRP (Oct. 27, 1998) at 46.
The SSOSA statute in effect at the time indicated that it is available to any first-time offender who is amenable to treatment, and not merely to sexual deviants. Former RCW 9.94A.120(7)(a)(i) (1990); State v. Ziegler, 60 Wash.App. 529, 803 P.2d 1355 (1991). Sanchez repeatedly emphasized, however, that he acted only out of normal, healthy impulses. A perfectly healthy defendant would arguably not be "amenable to treatment." Thus, the trial judge acted within his discretion in failing to impose a SSOSA sentence.
Sanchez also argues that because no restitution hearing was held within the 180-day time limit, the restitution order should be stricken. The Court of Appeals has properly remanded this issue to the trial court.

CONCLUSION
The only parties to a plea agreement are the prosecutor and the defendant either through counsel or pro se. Neither Sanchez's IO nor Harris's CCO was a party to the plea agreement and thus neither was bound by it. The trial judge in Sanchez's case acted within his discretion in refusing to impose a SSOSA sentence. The Court of Appeals is affirmed in both cases.
WE CONCUR: IRELAND, SMITH and OWENS, JJ.
CHAMBERS, J. (concurring in part and dissenting in part).
I agree with the majority that former RCW 9.94A.110 (2000)[1] requires a presentence report to be prepared by a Department of Corrections community corrections officer. I also agree that anyone entering a plea should reasonably understand the recommendation from a community corrections officer might differ from the recommendation of the prosecutor. When preparing a presentence report, a community corrections officer functions as an agent of the court, not as an agent of the prosecutor. I, therefore, concur with the majority in the case of Harris. However, because an investigative officer is an investigating arm of the prosecutor's office, I believe principles of fairness and agency require us to bind the investigating officer to the prosecutor's bargain. I, therefore, concur with Justice Madsen's dissent in the case of Sanchez and would reverse the Court of Appeals.

Harris
Harris's community corrections officer had a statutory duty to produce a presentence report. Former RCW 9.94A.110 (2000). While normally a community corrections officer is an agent of the Department of Corrections, see former RCW 9.94A.030(3) (2000), in the preparation of the presentence report he functions as an agent of the court, former RCW 9.94A.110 (2000). Accord State v. Poupart, 54 Wash.App. 440, 447, 773 P.2d 893 (1989); State v. Merz, 54 Wash.App. 23, 26, 771 P.2d 1178 (1989).
This Court has held a trial court may rely on sources of information other than those specified in former RCW 9.94A.110 (2000) so long as the sentence given falls within the standard range. State v. Mail, 121 Wash.2d 707, 711, 854 P.2d 1042 (1993). The Sentencing Reform Act of 1981 also specifies that in determining any sentence, the trial court may consider any information in the presentence report to which the defendant does not object. Former RCW 9.94A.370(2) (2000).[2] The community corrections officer's remarks were based on the information in the presentence report, and merely clarified the recommendation at the request of the court.
Details of what must be included in the report are given in CrR 7.1(b). In addition to the items listed in the rule, the report must contain "such other information as may be required by the court." Id. To include other relevant information without coming to *783 any conclusion regarding a sentencing recommendation is of limited value to courts, and would undermine their value. Therefore, I concur with the majority as to Harris.

Sanchez
When a defendant pleads guilty to a crime, he waives significant rights, including the right to a jury trial, the right to confront his accusers, the right to present witnesses in his defense, the right to remain silent, and the right to have the charges against him proved beyond a reasonable doubt. If the guilty plea is part of a plea bargain, the State is obligated to comply with any promises it makes:
[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.
Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).
While the community corrections officer in Harris functioned as an agent of the court, the investigating officer in Sanchez functions as the investigating arm of the prosecutor. Under Washington law, the prosecutor has the duty and the power to "ensure that a thorough factual investigation has been conducted before a decision to prosecute is made." Former RCW 9.94A.440(2)(b)(i) (2000).[3] This is for the pragmatic reason that "[a] prosecuting attorney is dependent upon law enforcement agencies to conduct the necessary factual investigation which must precede the decision to prosecute." Id. It is the prosecutor who is empowered to enter into plea agreements and to make sentence recommendations. Former RCW 9.94A.460 (2000). Investigating officers are so integral to the prosecutorial effort that to permit the investigating officer to undercut a plea agreement would, in effect, countenance the State's breach of promise in violation of Santobello. The prosecutor is obligated to comply with plea bargain promises, and the prosecutor's investigating officers may not undercut those promises by making inconsistent recommendations.
The majority correctly notes that an investigating officer is among those specifically permitted by former RCW 9.94A.110 (2000) to present arguments to the court. However, the majority makes too much of this fact. The prosecuting attorney is permitted to present arguments to the court by the same statute; but we do not permit the prosecutor to make arguments that undercut the plea bargain. State v. Sledge, 133 Wash.2d 828, 840, 947 P.2d 1199 (1997). Neither does former RCW 9.94A.110 (2000) give an investigating officer license to make recommendations which undercut those of the prosecutor. Investigating officers are so integral to the prosecutorial effort that to permit one to undercut a plea agreement would, in effect, permit the State to breach its promise. If the prosecutor is obligated to comply with plea bargain promises, then the prosecutor's investigating officers may not undercut those promises by making inconsistent recommendations.
In sum, the investigating officer is the investigating arm of the prosecutor, therefore, statements of the investigating officer for purposes of the sentencing hearing, are the statements of the prosecutor. A prosecutor may not undercut a plea agreement directly or by words or conduct. See State v. Talley, 134 Wash.2d 176, 183-84, 949 P.2d 358 (1998). Nor may he do so by proxy. Prosecutors may not do indirectly through their investigating officers what they are prohibited from doing directly.
I therefore would reverse the Court of Appeals in Sanchez, but affirm the Court of Appeals in Harris.
MADSEN, J. (dissenting).
I agree with the majority that the Investigating Officer (IO) in Sanchez's case has a statutory role in a sentencing hearing. I disagree, however, with the majority's conclusion that Investigating Officers and Community Corrections Officers (CCO) are entitled to make sentencing recommendations which undermine a plea agreement negotiated by the defendant and the prosecutor as the representative of the State of Washington. *784 Basic agency principles and simple fairness require that they be bound to a prosecutor's plea agreement. Accordingly, I would reverse the Court of Appeals in both cases.
This court has held that when the State breaches a plea agreement, it "undercuts the basis for the waiver of constitutional rights implicit in the plea." State v. Tourtellotte, 88 Wash.2d 579, 584, 564 P.2d 799 (1977). Because plea agreements are based in contract law, the pivotal issue is whether IOs and CCOs are agents of the state, or independent agents of the court. See former RCW 9.94A.090(1) (2000); State v. Sledge, 133 Wash.2d 828, 839 n. 6, 947 P.2d 1199 (1997). The majority declines to analyze the question of agency and instead resolves the question by looking only at the statutory role each plays in sentencing. Based on former RCW 9.94A.110 (2000), which provides that the IO may make argument regarding "the sentence to be imposed," the majority concludes that the IO is not bound by the plea agreement. Similarly, the majority finds that the CCO is not bound by the agreement because it "is not part of the prosecution team" and former RCW 9.94A.110 does not prohibit a CCO from making an argument regarding sentencing. Majority at 781. These conclusions, however, are at odds with the express language of the statutes governing sentencing as well as due process guarantees.
The majority offers little analysis of the agency question presented here, but this is precisely where resolution of this case should begin.[1] The authority of a Washington prosecuting attorney to act as an agent of the state of Washington is well established. The language of our state constitution directs that "all prosecutions shall be conducted ... by [the State of Washington's] authority." Constitution article IV, section 27. It also provides that the state Legislature may remove county prosecuting attorneys from office. Constitution article IV, section 9. Statutes also dictate that the prosecuting attorney represents the State as well as the county. RCW 36.27.005 provides that
[p]rosecuting attorneys are attorneys authorized by law to appear for and represent the state and the counties thereof in actions and proceedings before the courts and judicial officers.
Washington cases have recognized that the prosecutor is an agent of the State, whose agreement binds the State. Sledge, 133 Wash.2d at 839 n. 6, 947 P.2d 1199. Similarly, the Court of Appeals in Whatcom County v. State, 99 Wash.App. 237, 993 P.2d 273, review denied, 141 Wash.2d 1001, 10 P.3d 405 (2000) recognized that county prosecutors are agents of the state when prosecuting violations of state law. Id. at 248, 993 P.2d 273 (citing RCW 36.27.005 and RCW 36.27.020(4)). See also, State v. Bryant, 42 P.3d 1278 (Wash. Apr. 4, 2002) (Alexander, J. concurring).
Among the duties of the prosecuting attorney is the obligation to prosecute all criminal and civil actions in which the state or county may be a party. In the context of a plea agreement in a criminal case, former RCW 9.94A.080 (2000) sets forth the prosecutor's authority. The prosecutor may:
(1) Move for dismissal of other charges or counts;
(2) Recommend a particular sentence within the sentence range applicable to the offense or offenses to which the offender pled guilty;
(3) Recommend a particular sentence outside of the sentence range;
(4) Agree to file a particular charge or count;
(5) Agree not to file other charges or counts; or
(6) Make any other promise to the defendant, except that in no instance may the prosecutor agree not to allege prior convictions.
*785 Additionally, the Legislature has outlined the relationship between law enforcement and the prosecuting attorney:
A prosecuting attorney is dependent upon law enforcement agencies to conduct the necessary factual investigation which must precede the decision to prosecute. The prosecuting attorney shall ensure that a thorough factual investigation has been conducted before a decision to prosecute is made. In ordinary circumstances the investigation should include the following:
(A) The interviewing of all material witnesses, together with the obtaining of written statements whenever possible;
(B) The completion of necessary laboratory tests; and
(C) The obtaining, in accordance with constitutional requirements, of the suspect's version of the events.
If the initial investigation is incomplete, a prosecuting attorney should insist upon further investigation before a decision to prosecute is made and specify what the investigation needs to include
....
(iii) The prosecutor should be fully advised of the investigatory techniques that were used in the case investigation....
Former RCW 9.94A.440(2)(b)(i),(iii) (2000).[2]
Like prosecutors, CCOs are also agents of the state. In State v. Sargent, 111 Wash.2d 641, 652, 762 P.2d 1127, 1133 (1988) this court held that when a probation officer is assigned by the Department of Corrections to prepare a sentencing statement at the request of a judge of the superior court, he becomes an officer of the State:
In the context of deciding that a defendant's request to see his probation officer during questioning is not an invocation of the right to counsel, the United States Supreme Court stressed the fact that the probation officer's allegiance is unquestionably due the State, not the defendant.
Sargent, 111 Wash.2d at 652, 762 P.2d 1127.
Moreover, in that decision, the court held that the probation officer is the employee of the State, which seeks to prosecute the alleged offender. Sargent, 111 Wash.2d at 652, 762 P.2d 1127 (citing Fare v. Michael C, 442 U.S. 707, 720, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197 (1979)). Although factually distinguishable, Washington has also held CCOs to be agents of the state for Miranda purposes when CCO's conduct in-cell interviews of the defendant. State v. Willis, 64 Wash. App. 634, 825 P.2d 357 (1992) (citing Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).[3]
Based on the statutory duty placed on prosecutors by the Legislature to direct the activities of law enforcement, and the fact that the prosecuting attorney represents the State as well as the county, I would hold that the IO was bound by the plea agreement struck by the prosecuting attorney in Sanchez. Additionally, since case law establishes that the CCO is an agent of the State and the Constitution and state statutes dictate that the prosecuting attorney represents the State in criminal prosecutions, I would also hold that the CCO's recommendation undercutting the prosecutor's bargain requires reversal in Harris.
The majority, however, says that whether a public employee other than the prosecutor is bound by the agreement depends on the statutory role of the employee vis-a-vis the court. Majority at 779. Assuming this to be correct, the majority nevertheless arrives as the wrong conclusion under the relevant statutes.
Former RCW 9.94A.110 provides in pertinent part that: *786 "the court shall ... allow arguments from the prosecutor, the defense counsel, the offender, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigative law enforcement officer as to the sentence to be imposed."
Former RCW 9.94A.110 (emphasis added).
Although the majority says this statutory language authorizes an 10 to make an independent recommendation for sentencing, it overlooks important aspects of the statute. In State v. Wakefield, 130 Wash.2d 464, 471, 925 P.2d 183 (1996) this court noted that plea agreements in Washington are governed under former RCW 9.94A.080-.100 (2000). Former RCW 9.94A.105 does not fall within those sections relating to pleas. Rather, subsection .110 relates to sentencing in general. Perhaps more importantly, the statute lists not only law enforcement as persons from whom the court must hear, but also includes the prosecutor. Because a prosecutor can not make an argument contrary to the plea agreement, the statute cannot be intended to serve as authority for a law enforcement officer to make a recommendation contrary to the prosecutor's. Further, the language of subsection .110 refers to argument "as to the sentence to be imposed." It does not authorize any of the persons mentioned to make a sentencing recommendation. Indeed, the language of subsection 110 is consistent with other provisions of chapter 9.94A RCW which direct a prosecuting attorney to consult with victims regarding charging decisions and sentencing recommendations and which require prosecutors to inform the court if there are objections. Former RCW 9.94A.090 (prosecutor shall inform court of objections to plea agreement); former RCW 9.94A.440 (prosecutor may consult with victims). Conspicuously missing from the chapter is any language authorizing any person other than the prosecutor and the defendant, the only parties to a criminal prosecution, to make a sentencing recommendation.[4]
In contrast, when the Legislature has intended to authorize an actor to make a sentencing recommendation it has expressly stated its intent. In former RCW 9.94A.080 the Legislature empowered a prosecuting attorney to "recommend a particular sentence." Similarly, the Basic Juvenile Court Act provides that juvenile court counselors have a duty to "make recommendations to the court" regarding dispositions. RCW 13.04.040(2).
The majority also finds that statutory silence is a green light for CCOs to make sentencing recommendations which may be contrary to the prosecutor's plea agreement. As this court said in State v. Mail, 121 Wash.2d 707, 711, 854 P.2d 1042 (1993), "the SRA is the sole statutory source of sentencing authority." The statutes relied on by the majority, former RCW 9.94A.110, and CR 7.1(b), do not authorize a CCO to present argument at sentencing. CCOs are not ineluded in the list of individuals allowed to make arguments at sentencing under former RCW 9.94A.105. While this list includes defense counsel, the prosecutor, and even the investigating police officer, it does not include the CCO. In addition, there is no catchall provision at the end of the statute with language such as "and other interested persons."
Because the statute has a specific list of individuals, the rules of statutory construction bar the inclusion of other individuals in the list by implication. See State v. Sommerville, 111 Wash.2d 524, 535, 760 P.2d 932 (1988). The rule of statutory construction, expressio unius est exlusio latrius, states that specific inclusions exclude implications. See State v. Harris, 102 Wash.App. 275, 288, *787 6 P.3d 1218 (2000), review granted, 143 Wash.2d 1001, 21 P.3d 290 (2001).
The Legislature certainly knew how to assign responsibility in the context of criminal sentencing procedure. Accordingly, because the Legislature did not assign CCOs the duty to make sentencing recommendations, their duty is limited to producing presentence reports pursuant to court order. Former
RCW 9.94A.110 states:
[T]he court shall, at the time of plea or conviction, order the department to complete a presentence report before imposing a sentence upon a defendant who has been convicted of a felony sexual offense.
....
The court shall consider the risk assessment report and the pre-sentence reports, if any, including any victim impact statement and criminal history[.]
Former RCW9.94A.110.
Former RCW 9.94A.110 requires a court to order the Department of Corrections to prepare a presentence report, not a sentencing recommendation. The majority maintains, however, that former RCW 9.94A.110 does not specifically prevent a CCO from presenting argument at the sentencing hearing placing such an argument in the written text of the presentence report. The majority cites State v. Mail, 121 Wash.2d 707, 711, 854 P.2d 1042 (1993), stating that the statute specifies "`a baseline  a minimum amount of information which, if available and offered, must be considered in sentencing.'" Majority at 781.[5]
However, former RCW 9.94A.110 does not designate presentence reports as arguments. Therefore, the same statutory construction rule of expressio unius est exlusio latrius applies. The specific list of individuals permitted to offer argument regarding the sentence set forth in former RCW 9.94A.110 prohibits a court from permitting a CCO to make argument regarding sentencing. See Sommerville, 111 Wash.2d at 535, 760 P.2d 932.
In a similar vein, CrR 7.1(b) sets forth a list of activities that a CCO may engage in. Specifically, CrR 7.1(b) mandates that the report contain the defendant's criminal history and
such information about the defendant's characteristics, financial condition, and the circumstances affecting the defendant's behavior as may be relevant in imposing sentence or in the correctional treatment of the defendant, information about the victim, and such other information as may be required by the court.
As is evident, this list does not include making a sentencing recommendation and, therefore, the specific inclusions exclude implications. See Sommerville, 111 Wash.2d at 535, 760 P.2d 932.
Under a plain reading, the rule and relevant statutes do not contemplate that CCOs make a sentencing recommendation. By expressly omitting a CCO as one who may speak at sentencing hearings and by failing to include arguments at sentencing among the activities a CCO may engage in, the court and the Legislature clearly did not contemplate that such a recommendation could, or should be made by a CCO.
Furthermore, it is reasonable to assume that former RCW 9.94A.110 did not list a CCO as one who may make argument at sentencing because a CCO fulfills his or her statutory duty to the court by providing information in the presentence report. And, as noted, neither the statutes nor the court rules explicitly authorize the Department of Corrections, through a CCO, to make sentencing recommendations. Consequently, because former RCW 9.94A.110 does not permit a CCO to present argument at the sentencing hearing, and because former RCW 9.94A.110 requires the court to consider the sentencing report at the sentencing hearing, the Legislature's exclusion from the list of those who can present argument would be rendered meaningless if the CCO is permited *788 to simply place his or her argument in the written report considered at the hearing.
Due process requires a prosecutor to adhere to the terms of the plea agreement. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); State v. Sledge, 133 Wash.2d 828, 839, 947 P.2d 1199 (1997) (holding that a prosecutor may not make an argument contra to a plea agreement); State v. Miller, 110 Wash.2d 528, 532, 756 P.2d 122 (1988) (holding that because a breach of plea agreement implicates fundamental principles of due process, the terms of a plea agreement override an otherwise contradictory statute). If a prosecutor cannot, per the plea agreement, make a contrary argument, it follows that IOs and CCOs are bound to the same due process limitations. Thus, even though the statute permits arguments from the specific persons listed, it has to be read in conjunction with the United States Supreme Court and this Court's precedent limiting arguments that undermine plea agreements. Santobello, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427; Sledge, 133 Wash.2d at 839, 947 P.2d 1199.
In concluding that CCOs are independent agents of the court, thus not bound to the prosecuting attorney's plea agreement, the majority overlooks previous case law in Washington that asserts that CCOs are agents of the state. Willis, 64 Wash.App. 634, 825 P.2d 357; Sargent, 111 Wash.2d 641, 762 P.2d 1127. As a result, while no cases to date have challenged the practice of CCOs testifying at sentencing hearings; such practices are in contravention of Washington law, statutes, and rules.
Similarly, by concluding that an IO is not under the control of the prosecutor and is thus independent, the majority overlooks former RCW 9.94A.440(2)(b)(i) which provides for such control. This court's previous decisions, holding that a prosecutor is an agent of the state, whose agreement binds the state, as well as its other agents, is in accord with policy considerations recognized in other jurisdictions.
In Lee v. State, 501 So.2d 591 (Fla.Dist.Ct. App.1987), the Florida Supreme Court was faced with an issue identical to the issue in Sanchez and Harris  whether a promise contained in a plea agreement that the "state" will recommend a given sentence binds only the state attorney's office, or whether it also precludes other state agents, such as state law enforcement officers, from making sentencing recommendations contrary to the terms of the agreements. Lee, 501 So.2d at 592. The plea agreement in Lee provided that the state would recommend probation, but a law enforcement agent's recommendation of incarceration was included in the presentence investigation report. See id.
The court in Lee recognized the inherent unfairness of allowing other state agents to undermine a bargained-for plea, and held that a prosecutor's plea bargain binds all state agents, regardless of whether they are employees of a separate department or whether they were parties to the plea agreement. Lee, 501 So.2d at 593 (citations omitted). The Lee court found contradictory testimony to an established plea agreement is unfair and ultimately "compromised the effectiveness of the state's recommendation." Lee, 501 So.2d at 593. The court in Lee discussed and agreed with Fortini v. State, 472 So.2d 1383, 1385 (Fla. 4th DCA 1985), review denied, 484 So.2d 10 (Fla.1986). The court in Lee also agreed with Judge Ervin's dissent in the case sub judice Lee v. State, 490 So.2d 80, 84 (Fla.Dist.Ct.App.1986) which stated that once a plea bargain based on a prosecutor's promise that the state will recommend a certain sentence is struck, "basic fairness mandates that no agent of the state make any utterance that would tend to compromise the effectiveness of the state's recommendation." Id. (Ervin, J., dissenting).
The Lee court concluded that it made no difference "whether the recommendation contrary to the agreement is made in open court or ... contained in a [presentence] report." Lee, 501 So.2d at 593. "`The crucial factor is that a recommendation contrary to the state's agreement came to the sentencing court's attention.'" Lee, 501 So.2d at 593 (quoting Fortini 472 So.2d at 1385). Thus, the court in Lee found the principle of fairness to be the most important consideration in determining whether other state employees *789 are bound by a prosecutor's plea agreement. Id.
This position is similar to the position of the federal courts, which have held that absent an express limitation on the government's obligations, a plea agreement entered on behalf of the government binds the government as a whole. See, e.g., Allen v. Hodden, 57 F.3d 1529, 1535 (10th Cir.1995).
Even the Montana Supreme Court is not in complete agreement on the issue of who is bound by a prosecutor's plea agreement. State v. Sanders, 294 Mont. 539, 982 P.2d 1015 (1999) (citing State v. Allen, 197 Mont. 64, 69, 199 Mont. 204, 645 P.2d 380 (1981)) (citations omitted). The dissenting view reasons that the prosecutor's recommendation is rendered meaningless when another state agent makes a contrary recommendation:
What sense does it make to pay lip service to the principle that an accused person has a right to rely on material representations made to him or her as an inducement to enter into a plea agreement, but then allow the practical effect of that inducement to be circumvented by permitting another agent of the same government to do just the opposite of what was promised to the defendant? Is there any question whose recommendation the district judge will take more seriously?
State v. Bowley, 282 Mont. 298, 313, 938 P.2d 592 (1997) (Trieweiler, J., specifically concurring in the result; Hunt, J., joining). See also Sanders, 982 P.2d at 1021 (reiterating the dissenting opinion).

Conclusion
We have previously held prosecutors are agents of the state, whose agreement binds the state as well as it other agents. To allow CCOs and IOs to present arguments to the sentencing judge, in any form, which contradict another state agency's contract not only appears unfair, but is unfair. It renders the prosecution's agreement meaningless, disintegrates the fabric of our criminal justice system, and will deter future plea agreements. In my view, IOs and CCOs are bound to prosecutorial plea agreements and, as a result, I respectfully dissent.
WE CONCUR: ALEXANDER, C.J., SANDERS and JOHNSON, JJ.
NOTES
[1] Sanchez Report of Proceedings (SRP) (Oct. 27, 1998) at 24-25.
[2] RAP 2.5(a)(3).
[3] The dissent seems to imply that even though the prosecutor agreed to recommend a particular sentence, because of the relationship between the prosecutor and the IO, the prosecutor is able to influence an IO's testimony at a sentencing hearing. Dissent at 784 n. 1. Although Sanchez asserts that the defense counsel's comment at the plea hearing that the prosecutor "`tries hard to work with the victims and their families and the police too in any plea agreement,'" Sanchez's Suppl. Br. at 7 (quoting Sanchez Suppl. Report of Proceedings at 8), supports his position that the IO was consulted regarding the plea agreement, there is no evidence that such a consultation occurred in Sanchez's case. Even if the prosecutor had consulted with the IO, Sanchez offers no evidence that the prosecutor improperly sought the IO's assistance in undermining the plea agreement by making a sentencing recommendation contrary to the plea agreement. If that had happened, the plea agreement might have been breached. See State v. Sledge, 133 Wash.2d 828, 842-43, 947 P.2d 1199 (1997) (holding that prosecutor breached the plea agreement by eliciting testimony from witness that was contrary to agreed upon sentence recommendation).
[4] Even if we agreed with the petitioners and the dissent's position that the case should be analyzed according to agency principles, the dissent's agency analysis presents a strained view of Washington law. The dissent improperly relies on State v. Sledge, 133 Wash.2d at 839 n. 6, 947 P.2d 1199 to support its assertion that "Washington cases have recognized that the prosecutor is an agent of the state, whose agreement binds the state." Dissent at 784. Although Sledge uses the terms "prosecutor" and "state" interchangeably, the court in that case was not asked to decide the question of whether a prosecutor is an agent of the state. Furthermore, the dissent mischaracterizes our holding in State v. Sargent, 111 Wash.2d 641, 762 P.2d 1127 (1988). In Sargent, we specifically limited our holding that the probation officer was an agent of the state to situations where a defendant should have been given his procedural warnings pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). 111 Wash.2d at 652, 762 P.2d 1127 (holding that probation officer was "clearly the agent of the State in this transaction") (emphasis added). In fact, the probation officer's soliciting of the defendant's posttrial confession was incorporated into the probation officer's presentence report and was not challenged at the sentencing hearing. Id. at 644, 762 P.2d 1127. It was only after the defendant's conviction was reversed on appeal and the State sought to use the confession at his subsequent trial that an objection was made. Id. The dissent acknowledges the factual distinction between this case and a Court of Appeals case that held that CCOs are agents of the state for Miranda purposes. Dissent at 785 (citing State v. Willis, 64 Wash. App. 634, 825 P.2d 357 (1992)). Finally, relying on former RCW 9.94A.440 (2000), the dissent asserts that IOs act as agents of the prosecution because prosecutors "direct the activities of law enforcement." Dissent at 785. However, former RCW 9.94A.440(2)(b) merely requires a prosecutor to ensure that the IO's evidence is sufficient to support a decision to prosecute. It does not remove law enforcement officers independent authority to investigate criminal activity and uphold the law. See, e.g., RCW 35.23.161 ("The department of police in a city of the second class shall be under the direction and control of the chief of police subject to the direction of the mayor.") (emphasis added); RCW 35.27.240 ("The department of police in a town shall be under the direction and control of the marshal subject to the direction of the mayor.... [The marshal's] lawful orders shall be promptly executed by deputies, police officers and watchmen."); RCW 36.28.010 ("The sheriff is the chief executive officer and conservator of the peace of the county. In the execution of his office, he and his deputies: (1) Shall arrest and commit to prison all persons who break the peace, or attempt to break it, and all persons guilty of public offenses.").
[5] Sergeant Ruffin was employed by the Moses Lake Police Department. Sanchez Clerk's Papers at 37.
[6] The dissent asserts that because former RCW 9.94A.110 "does not fall within those sections relating to pleas" but is related to "sentencing in general," it should not serve as authority for IO's to make arguments regarding the sentence to be imposed. Dissent at 786. However, this argument makes no sense. Although other statutes address the plea agreement process, the sentencing hearing authorized by former RCW 9.94A.110 necessarily requires a conviction and former RCW 9.94A.030(10) defines "conviction" as "an adjudication of guilt pursuant to Titles 10 or 13 RCW and includes a verdict of guilty, a finding of guilty, and acceptance of a plea of guilty" (emphasis added).
[7] Even if we were to accept the dissent's position, in this case Sergeant Ruffin did not make a specific sentence recommendation. He merely articulated a number of reasons for imposing a harsh sentence and because the prosecutor made no sentence recommendation, his testimony did not directly contradict the prosecutor's position. See SRP at 24-27.
[8] As noted above, Sanchez does not contend that the prosecutor improperly encouraged the IO to offer evidence supporting a greater sentence than was agreed to in the plea agreement.
[9] The dissent asserts that former RCW 9.94A. 110 merely "requires a court [to] order the Department of Corrections to prepare a presentence report, not a sentencing recommendation." Dissent at 787. However, the dissent fails to acknowledge that there is no statutory limitation on what may be included in a presentence report. As the dissent notes, CrR 7.1(b) mandates that the report contain certain information about the defendant and "such other information as may be required by the court." CrR 7.1(b) (emphasis added). Dissent at 787. See also former RCW 9.94A.370(2) (court may rely on any information in the presentence report, unless it is the subject of an objection).
[10] The dissent asserts that because CCO's are "expressly omitted" from making arguments regarding sentencing in former RCW 9.94A.110, the rule of statutory construction, expressio unius est exclnsio latrius, prohibits their inclusion. Dissent at 786, 787. Unlike the statute analyzed in State v. Sommerville, 111 Wash.2d 524, 760 P.2d 932 (1988), which provided for three specific exceptions to the general rule, RCW 9.94A.110 prescribes only who the court must hear from. RCW 9.94A.110 states that the "court shall ... allow arguments from ...", not the "court shall... allow only arguments from...." Thus, it does not, as argued by the dissent, specifically limit who may present testimony at the sentencing hearing to only those parties listed in the statute.
[11] Harris does not contend that there was any collaboration between the prosecutor and the CCO as to CCO's sentencing recommendation nor does he argue that the prosecutor in some way encouraged the CCO to make a sentencing recommendation contrary to the plea agreement.
[1] RCW 9.94A.110 has been recodified by the Laws of 2001 as RCW 9.94A.500. I do not consider the impact, if any, of the revisions.
[2] RCW 9.94A.370 has been recodified as RCW 9.94A.530.
[3] RCW 9.94A.440 has been recodified as RCW 9.94A.411.
[1] The majority repeatedly makes the point that the only parties to the plea agreement are the prosecuting attorney and the defendantthat neither an investigating officer nor a community corrections officer is involved in the negotiations or a party to the agreement. The majority apparently thinks this renders the agency question irrelevant. However, the question who is a party to the contract simply does not answer the question of who is bound by the agreement under agency principles.
[2] The majority says that Sgt. Ruffin, the IO in Sanchez, is not under the control of the prosecutor's office. Former RCW 9.94A.440 is to the contrary. Although Ruffin was employed by the Moses Lake Police Department and had independent authority to investigate criminal activity, as the majority points out, this does not alter the fact that by statute he was an investigator for the prosecutor.
[3] In contrast to CCOs are juvenile probation officers who the Legislature has provided are an arm of the court, RCW 13.04.035, and who shall "make recommendations to the court" regarding dispositions. RCW 13.04.040(2).
[4] The majority maintains that accepting my view that an IO is not authorized by former RCW 9.94A.110 to make sentencing recommendations makes no difference in Sanchez's case. The majority states that the IO did not make a specific recommendation, but instead provided "a number of reasons for imposing a harsh sentence....." Majority at 780 n. 7. This reasoning does not withstand scrutiny. An IO bound by a plea agreement is bound in the same way that the prosecuting attorney is bound. A prosecuting attorney violates a plea agreement where he or she "undercut[s] the terms of the agreement explicitly or by conduct evidencing an intent to circumvent the terms of the plea agreement." State v. Sledge, 133 Wash.2d 828, 840, 947 P.2d 1199 (1997) (emphasis added).
[5] The majority claims that in State v. Mail, 121 Wash.2d 707, 708, 854 P.2d 1042 (1993), this court "acknowledged a CCO's ability to recommend a specific sentence to the sentencing court." Majority at 780, 781. The majority misstates what occurred in that opinion. The court in Mail merely recited the fact that such a recommendation was made; it did not address the legal issue and never passed on the propriety of what had happened.