FILED
COURT OF APPEALS
DIVISION II

2013 OCT 15 AM 8: 56

STATE OF WASHINGTON

BY_____
       DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44483-6-II |
| Respondent, | Consolidated with:<br>No. 44486-1-II |
| v. | |
| J.R., | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — In this consolidated appeal, JR, born in 1996, appeals the manifest injustice disposition imposed by the juvenile court following his guilty plea to residential burglary.[1] He argues that the prosecutor and probation counselor undercut the agreed disposition recommendation and breached the plea agreement, requiring reversal of the manifest injustice disposition. Because we agree that the prosecutor breached the plea agreement, we reverse and remand for proceedings consistent with this opinion.

## FACTS

On October 4, 2012, the State filed charges against JR for fourth degree assault with sexual motivation. The juvenile court held a bench trial on December 20, 2012, and adjudicated JR guilty of the charge. It delayed disposition, however, and ordered JR to undergo a psychosexual evaluation and polygraph examination.

---

[1] A commissioner of this court originally considered this appeal on an accelerated basis under RAP 18.13, and then referred it to a panel of judges.

On December 9, 2012, prior to JR's assault trial, JR entered a home without permission and stole a number of items. JR admitted to police that he committed the crime, and on December 10, the State charged him with residential burglary.

On January 3, 2013, JR asked the juvenile court for a deferred disposition on the residential burglary adjudication, which the deputy prosecuting attorney, Julia Eisentrout, opposed because the burglary victim was also the victim of the earlier assault adjudication and JR had committed this burglary while the assault charge was pending trial in violation of his terms of release. JR's probation counselor, Kisa Spencer, also opposed a deferred disposition and asked for a joint disposition hearing on the burglary and the assault charges to occur after JR had completed the previously ordered polygraph examination and psychosexual evaluation. The juvenile court denied JR's motion for a deferred disposition, at which time JR told the juvenile court that he wished to plead guilty to the burglary charge.

JR handed the juvenile court a Statement on Plea of Guilty, wherein it stated that "I understand that the prosecuting attorney will make the following recommendation to the judge[:] Local Sanctions." Clerk's Papers (CP) at 28. The statement additionally provided that it was JR's understanding that the probation counselor would also recommend local sanctions. The statement was signed by JR, his attorney, and the juvenile court, but not by the prosecutor or probation counselor. Before accepting JR's guilty plea, the juvenile court asked JR a series of questions to ensure that he understood the rights he was waiving. Specifically, the juvenile court asked JR if he understood that "it is a local sanctions case," meaning that the court would impose a penalty of 30 days of confinement in a detention facility followed by not more than 12 months of community supervision together with other terms and conditions, unless the court found that imposing local sanctions was a manifest injustice. The juvenile court also asked JR if he

2

understood that the judge or commissioner could determine that local sanctions were not appropriate in the case and could commit JR to a juvenile correctional institution. JR responded to both questions that he understood those terms and that he still wanted to plead guilty.[2] Accordingly, the juvenile court accepted JR's guilty plea and continued the disposition to coincide with the disposition on the assault charge. Notably, the juvenile court's colloquy did not expressly address the prosecutor's or probation counselor's local sanctions recommendations.

On February 1, 2013, the juvenile court held a joint disposition hearing on both charges. Based on JR's responses on the psychological evaluation and polygraph examination, Spencer recommended a manifest injustice disposition of 52 weeks at a Juvenile Rehabilitation Administration (JRA) facility on the assault adjudication. As to the residential burglary plea, Spencer also recommended a manifest injustice disposition of 52 weeks based on the fact that JR's burglarizing the assault victim's home had occurred while he was on release pending trial for assaulting the same victim. As to the aggravating factors, Spencer stated that a standard range disposition was clearly too lenient and that JR failed to comply with his house arrest, had other complaints filed against him, and was a danger to the community. In addition, Spencer stated that JR could get the appropriate help for his sexualized behavior with two years at a JRA facility.

Deputy prosecutor Eisentrout agreed with Spencer's disposition recommendation on the assault charge based on JR's responses on the psychosexual evaluation and polygraph examination, as well as on JR's admission to the police and the evaluator that he had committed

---

[2] JR's attorney also stated that JR was proceeding voluntarily and will full knowledge of his rights, and that this had been JR's decision from the beginning of the charge.

3

the charged assault, yet testified at trial that he did not commit it. As to the residential burglary charge, Eisentrout stated:

> I do believe I had obtained this report, that I did inform him that I would recommend local sanctions. So I will stand by that recommendation, it was made before I had this report and evaluation and as noted, he does not have any criminal history. However, *I do think it's important to note that he did victimize the same family that was the subject of this and in the evaluation he said that he picked them out because he was angry with them.*
> *It's also important to note that he violated his conditions of release on more than one oc—occasion, they were revoked the second time that he violated them and committed the new offense.* So the Court had several conversations with him about what was expected of him while he was on release for the Assault 4 with sexual motivation and he just completely disregarded those conversations.
> So I will stand by my recommendation, however, I—I did recommend local sanctions on the residential burglary. However, I am in agreement with the year recommendation on the Assault 4 sexual motivation.

Report of Proceedings (RP) (Feb. 1, 2013) at 52-53 (emphasis added).

In response, JR argued that, as to the residential burglary charge, he had no criminal history points and had accepted responsibility for the crime by pleading guilty. In addition, he had not committed the burglary for any type of sexual motivation and had taken items that any other "kid[]" would take. RP (Feb. 1, 2013) at 54. As such, he argued that there were no grounds for a manifest injustice disposition on the burglary charge and the only reason for imposing such a disposition would be to get around the 52-week maximum on the assault charge.

In its oral ruling, the juvenile court stated that there were "many, many aggravating factors" in both cases that supported the findings of manifest injustice, which had been outlined "by the probation officer and by the State." RP (Feb. 1, 2013) at 61. It noted that Sue Batson, the licensed mental health professional who evaluated JR, reported that he had a high risk to re-offend, was a danger to the community, and could not be treated effectively in a local setting. The juvenile court also stated that the most significant evidence regarding an appropriate

4

disposition came from JR himself, who admitted to some "extremely disturbing" behavior. RP (Feb. 1, 2013) at 59. In addition, JR had taken a motor vehicle without permission, admitted to using marijuana, and had "dirty" urinalyses. RP (Feb. 1, 2013) at 60.

Accordingly, the juvenile court found that JR was not a suitable candidate to remain in the community, as it was not safe for the community or in his best interest, and the best chance of helping him modify his behavior was to send him to a facility where he could receive intensive treatment. In its written order on adjudication and disposition as to the residential burglary charge, the juvenile court found that JR had an offender score of "1" and that the following aggravating factors supported a manifest injustice disposition:

> [1.] There are other complaints which have resulted in diversion or a finding or plea of guilty which are not included as criminal history
>
> [2.] Respondent committed this offense while under house arrest for another charge against the same victim (victim's family) as in this case. Respondent has failed to abide by release conditions and is a danger to the community.

CP at 31.[3] On each charge, the juvenile court imposed a manifest injustice disposition of 52 weeks, for a total of two years' commitment to JRA. JR appeals.

---

[3] As to the assault charge, which is not at issue in this appeal, the juvenile court found the following aggravating factors to support a manifest injustice disposition:
> [1.] The victim was particularly vulnerable
> [2.] The current offense included a finding of sexual motivation pursuant to RCW 13.40.135
> [3.] There are other complaints which have resulted in diversion or a finding or plea of guilty which are not included as criminal history
> [4.] Respondent is not amenable to community based treatment. The respondent is a threat to the community safety. He has failed a polygraph where he lied and admitted to offending against another victim. While on release conditions he committed another offense against the same victim (victim's family).

CP at 7.

5

ANALYSIS

JR first argues that we should reverse the manifest injustice disposition for the residential burglary adjudication because the prosecutor undermined the agreed disposition recommendation for local sanctions and breached the plea agreement by highlighting aggravating factors in support of an exceptional sentence. We agree that the prosecutor breached the plea agreement.

Breach of Plea Agreement

Whether a breach of a plea agreement has occurred is a question of law, which the appellate court reviews de novo. A defendant may raise the issue of a prosecutor's breach of a plea agreement for the first time on appeal. *State v. Sledge*, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997).

Plea agreements are contracts and are analyzed under basic contract principles. *Sledge*, 133 Wn.2d at 838. Because a defendant gives up important constitutional rights by agreeing to a plea bargain, due process considerations come into play. *Sledge*, 133 Wn.2d at 839. "Due process requires a prosecutor to adhere to the terms of the agreement." *Sledge*, 133 Wn.2d at 839. Although the prosecutor need not make an agreed sentencing recommendation enthusiastically, the prosecutor must act in good faith, participate in the sentencing proceedings, answer the court's questions candidly, and not hold back relevant information regarding the plea agreement. *State v. Williams*, 103 Wn. App. 231, 235-36, 11 P.3d 878 (2000) (citing *State v. Jerde*, 93 Wn. App. 774, 780, 970 P.2d 781, *review denied*, 138 Wn.2d 1002 (1999)), *review denied*, 143 Wn.2d 1011 (2001). At the same time, the prosecutor may not undercut the terms of the plea agreement "explicitly or by conduct evidencing an intent to circumvent the terms of the plea agreement." *Sledge*, 133 Wn.2d at 840.

In determining whether a prosecutor violated the duty to adhere to the plea agreement, the reviewing court considers the entire sentencing record and asks whether the prosecutor contradicted the State's recommendation by either words or conduct. *Jerde*, 93 Wn. App. at 780 (citing *State v. Talley*, 134 Wn.2d 176, 187, 949 P.2d 358 (1998)). The appellate court applies an objective standard to determine whether the State has breached the plea agreement, irrespective of the prosecutor's motivations or justifications for the failure in performance. *Jerde*, 93 Wn. App. at 780 (citing *In re Pers. Restraint of Palodichuk*, 22 Wn. App. 107, 110, 589 P.2d 269 (1978)). The focus of the appellate court's decision is on the effect of the State's actions, not the intent behind them. *Sledge*, 133 Wn.2d at 843 n.7. "[A] prosecutor 'could easily undercut the plea agreement by placing emphasis on the evidence that supports findings that aggravating factors are present.'" *Jerde*, 93 Wn. App. at 781 (quoting *Talley*, 134 Wn.2d at 186).

In the instant case, we first consider whether a plea agreement existed between the prosecution and JR, as the Statement on Plea of Guilty was not signed by the prosecutor. Here, however, Eisentrout told the juvenile court at the disposition hearing on February 1, 2013, that she did inform JR that she would recommend local sanctions. Thus, we conclude that a plea agreement existed between JR and the State.

In addressing whether the prosecutor breached the plea agreement, the State argues that the prosecutor's conduct did not cross the line into advocacy of an exceptional sentence because she recommended local sanctions, informed the juvenile court of information relevant to sentencing, and did not emphasize the information more than her recommendation of local sanctions. We disagree with the State and conclude that the remarks made by Eisentrout as to

the residential burglary charge constituted unsolicited advocacy contrary to the State's agreed sentencing recommendation for local sanctions, and thus the State breached the plea agreement.

Although Eisentrout twice stated that she stood by her recommendation for local sanctions, the record shows that she was hesitant to do so, as she did not have the psychosexual evaluation and polygraph examination results at the time she agreed to local sanctions. *See In re Palodichuk*, 22 Wn. App. at 110-11 (finding that, even though State initially fulfilled its plea obligation by making agreed recommendation, prosecutor's reservation of recommended sentence tainted the sentencing process so that a breach occurred); *Jerde*, 93 Wn. App. at 777-79 (prosecutors breached agreement even though they reiterated the agreed sentencing recommendation). In addition, Eisentrout's comments that JR victimized the same individual as in the assault charge and committed the crime while on terms of release were unnecessary to inform the juvenile court of relevant information, as Spencer had already informed the court of such facts.[4] *See Jerde*, 93 Wn. App. at 782 (prosecutors unnecessarily commented on written presentence report already before the court and underscored aggravating factors). Further, Eisentrout crossed the line into advocacy when she highlighted factors that could support a manifest injustice disposition and gave such information voluntarily. *See Williams*, 103 Wn. App. at 238 ("The prosecutor made unsolicited references to statutory aggravating factors justifying an exceptional sentence and thereby advocated for those factors."); *Jerde*, 93 Wn. App. at 782 ("Without prompting from the court, the first prosecutor laid the foundation by

---

[4] Although it could be argued that Eisentrout made those comments in support of a manifest injustice disposition on the assault charge, as she addressed both charges together, the same cannot be said for her comment that JR "picked [the Flochs] out because he was angry with them." RP (Feb. 1. 2013) at 53. That comment appears to relate to the residential burglary charge, as that crime occurred after Floch accused JR of assault.

articulating several factual and legal arguments that would support an exceptional sentence.");
*State v. Xaviar*, 117 Wn. App. 196, 201, 69 P.3d 901 (2003) ("The above unsolicited remarks obviously refer to the aggravating factors in RCW 9.94A.535 that justify an exceptional sentence. By highlighting these compelling aggravating facts, the prosecutor clearly signaled to the court her lack of support for a standard range sentence and thereby 'effectively undercut the plea agreement in a transparent attempt to sustain an exceptional sentence.'") (quoting *Jerde*, 93 Wn. App. at 782).

The effect of Eisentrout's comments are clear, as the juvenile court stated in its oral ruling that there were "many, many aggravating factors" in both cases that supported a manifest injustice disposition, as outlined by the probation counselor *"and by the State." See* RP (Feb. 1, 2013) at 61 (emphasis added). The juvenile court's written findings also mirrored the comments made by the State. Therefore, based on these facts, the State undercut its recommendation for local sanctions and breached the plea agreement.[5] In such a situation, JR has a choice of remedies. He may vacate the plea agreement and go to trial, or he may elect to enforce the plea bargain agreement with the State in a new disposition hearing in front of a different judge. *Sledge*, 133 Wn.2d at 846; *Xaviar*, 117 Wn. App. at 202.

---

[5] Because this conclusion is dispositive, we need not address JR's remaining argument to reverse on the basis of the probation counselor's broken promise, except to note that, in the event JR elects the remedy of a new sentencing hearing: (1) probation counselors are not bound by plea agreements because they are agents of the juvenile court; and (2) despite the language in the plea agreement, the record does not support JR's assertion that the probation counselor made any promise to him to recommend local sanctions for the residential burglary adjudication. *State v. Poupart*, 54 Wn. App. 440, 445, 773 P.2d 893, *review denied*, 113 Wn.2d 1008 (1989).

No. 44483-6-II/ No. 44486-1-II

We reverse the juvenile court's order on adjudication and disposition as to the residential burglary charge and remand for proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, A.C.J.

I concur:

Hunt, J.

10

QUINN-BRINTNALL, J. (concurring) — I concur with the majority that the State breached its plea agreement with J.R. I write separately to note that although the prosecutor did not sign the statement of defendant on plea of guilty and J.R.'s pending assault was not disclosed on the statement, there was a binding plea agreement and the prosecutor was obligated to recommend local sanctions. Here, the prosecutor did not sign the statement of defendant on plea of guilty, but at the disposition hearing she told the court that she had agreed to recommend local sanctions. Because the prosecutor acknowledged entering into a plea agreement with J.R., the plea agreement is valid.

Furthermore, J.R.'s failure to include his pending assault charge in his statement on plea of guilty does not invalidate the plea agreement. Fourth degree assault is a gross misdemeanor. RCW 9A.36.041(2). Under the juvenile offender sentencing standards a gross misdemeanor is calculated as 1/4 of a point for determining a juvenile offender's criminal history score. RCW 13.40.0357(2). Fractional points are to be rounded down. RCW 13.40.0357(2). Therefore, J.R.'s criminal history score is zero regardless of whether the fourth degree assault is included. Accordingly, the failure to include J.R.'s fourth degree assault charge does not invalidate the plea agreement.

Here, there was a valid plea agreement between the State and J.R. which required the prosecutor to recommend local sanctions. I concur with the majority that the prosecutor's statement at sentencing was a breach of the plea agreement and while there is no need to reach J.R.'s additional issues, the probation officer is not bound by the conditions of the plea agreement should J.R. elect a new sentencing hearing. I agree that the juvenile court's order on

adjudication and disposition as to the residential burglary should be reversed and this case remanded to the juvenile court for further proceedings consistent with this opinion.

QUINN-BRINTNALL, J.